UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                    :
THE GAP, INC.,                                      :
                                                    :
                    Plaintiff,                      :          Case No.:   1:20-cv-4541
                                                    :
            v.                                      :
                                                    :          **COMPLAINT**
PONTE GADEA NEW YORK LLC,                            :
                                                    :
                    Defendant.                      :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff The Gap, Inc. ("Gap" or "Tenant"), by and through counsel, as and for its

complaint against Defendant Ponte Gadea New York LLC ("Landlord"), states as follows:

## <u>NATURE OF THE CLAIMS</u>

1.      The COVID-19 pandemic has presented unique and unprecedented circumstances

that were unforeseeable—indeed, unimaginable—even just a few months ago. The disease is

highly contagious and its spread has been rapid. The government's reaction was profound and

has prevented the Gap store at issue in this action from opening its doors for months. To protect

the health and safety of its employees, customers, and the surrounding community, and comply

with applicable law, Gap was required to close this store and keep it closed. And like

innumerable other companies, it was required to make the difficult decision to furlough this

store's employees—and tens of thousands more for closed stores across the country—to preserve

its finances while revenue from the stores dropped to zero overnight. Even now, as government

restrictions begin to ease for some activities and types of businesses but not others, the disease

remains virulent. The recommended guidelines for operations may provide some measure of

protection, but will radically change the shopping experience for the few short months that

remain of what the parties expected would be the remaining term of the Lease. Even now, as the disease curves around the country evolve with each incremental phase of reopening, and social distancing guidelines are ignored by many, governments and industry experts have predicted one or more next waves of infection will occur. Indeed, shopping for apparel in physical stores will look nothing like what was contemplated by the lease when it was executed. In a world of unforeseeable events, the circumstances the store has faced are at the extreme end of unforeseeability.

2.     These circumstances not only imposed severe and irreparable hardship on Gap, they frustrated the express purpose of the lease (the "Lease") Gap holds for retail space (the "Premises") at the building located at 130 East 59th Street, New York New York (the "Building") and made the principal object of the Lease illegal, impossible, and impracticable. Because few months remained on the term of the Lease at the time COVID-19 reached New York, the impairment of the purpose of the Lease, and Gap's interests in the Lease, became permanent and irreparable. Under such circumstances, the lease was terminated pursuant to law effective on or before March 19, 2020, both under the terms of the Lease and the laws of the State of New York, and Gap had no further obligation to pay rent or other consideration under it. Gap is entitled to a refund of a prorated portion of the rent and expenses it paid in advance for March 2020, declaratory relief regarding its obligations under the Lease, and the equitable remedies described below.

2

## PARTIES

3.      Tenant is a Delaware corporation with its principal place of business in San Francisco, California.

4.      Upon information and belief, Landlord is a New York limited liability company that shares its principal place of business with its member, Ponte Gadea USA, Inc., a Florida corporation whose principal place of business is located at 270 Biscayne Boulevard Way, Suite 201, Miami, Florida 33131.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000 and is between citizens of different states.

6.      Venue is proper under 28 U.S.C. § 1391(b)(2) because the Premises are within this District.

## FACTS

7.      The Lease was originally entered between UJA-FED Properties Inc. ("Original Landlord") and Tenant on February 18, 2005. Pursuant to its Article 32.20, the Lease is confidential.

8.      Landlord is the current landlord and successor-in-interest to the Original Landlord under the Lease.

9.      The parties' mutual and express purpose in entering into the Lease was to provide Tenant with commercial retail space suitable for the operation of a retail store selling apparel.

10.      For example, Article 4.1 of the Lease states in relevant part that Tenant "shall use the Premises . . . only for the operation of first-class retail businesses (i) under the Gap and Banana Republic trade names, for the sale of apparel and accessories and such other merchandise

3

categories are consistent with other stores operating under the Gap trade name and the Banana Republic trade name as of the date hereof, and (ii) at [Tenant]'s or Banana Republic's option, as the case may be, under such other trade names as are then being operated by Initial Tenant or Banana Republic, as the case may be, for the sale of such merchandise categories as are consistent with other stores operating under the Gap trade name and the Banana Republic trade name, as the case may be, as of the date hereof, and, in either case, for uses reasonably incidental thereto."

11.     But for the ability to operate a retail store at the Premises, Tenant would not have entered into the Lease, and Tenant's ability to operate a retail store at the Premises was the sole consideration Tenant received in exchange for entering into the Lease, all other nominal benefits of the Lease being a part of, and subordinate and ancillary to, that consideration.

12.     From the inception of the Lease until March 2020, Tenant maintained and operated a retail apparel store at the Premises pursuant to the Lease.

13.     On March 7, 2020, the Governor of New York issued Executive Order 202 declaring a disaster in the State of New York.

14.     On March 12, 2020, the Governor issued Executive Order 202.1, requiring any place of business to operate at no greater than fifty percent occupancy.

15.     Also on March 12, 2020, the Mayor of New York City issued Emergency Executive Order No. 98, declaring a disaster in the City of New York.

16.     On March 16, 2020, the Mayor issued Emergency Executive Order No. 100 imposing restrictions on various types of retail operations.

4

17.     On March 18, 2020, the Governor issued Executive Order 202.6, requiring non-essential businesses to reduce their in-person work force by 50%.  Tenant's store at the Premises is non-essential under this Order.

18.     On March 20, 2020, the Governor of New York issued Executive Order 202.8, requiring non-essential businesses to reduce their in-person work force by 100% no later than March 22, 2020 at 8:00 p.m. Tenant's store at the Premises is non-essential under this Order.

19.     Also on March 20, 2020, the Mayor issued Emergency Executive Order No. 102, further restricting retail operations in the City.

20.     Following the outbreak of COVID-19 in the United States, Tenant was forced to suspend all retail operations at the Premises on or before March 19, 2020, to comply with applicable governmental orders and guidelines and to protect the health and safety of its employees, customers, and the surrounding community. Between March 2020 and the present, Tenant was never able to resume normal operations at the Premises. And given the Lease term was scheduled to end soon, Tenant will never be able to resume operations in a manner contemplated by the Lease.

21.     As a result of the foregoing circumstances and orders, and other applicable governmental orders and guidelines, all of which were unforeseeable at the time the Lease was entered into, and which resulted from no act of either party, the parties' intended use of the Premises was frustrated, became impossible, illegal, and impracticable. Specifically, Tenant was forced to suspend all retail operations at the Premises. Tenant's purpose in entering into the Lease was frustrated. Tenant's performance under the Lease became impossible and impracticable. And Tenant was deprived of the consideration it received in exchange for entering into the Lease.

22.     Indeed, although the Lease specifically contemplated that Tenant would benefit from its use for a fixed term, as a result of the unforeseeable COVID-19 crisis, Tenant has been deprived of its use of the Premises for the full term that Tenant was promised under the Lease. Such a result is inequitable and damages Tenant, in part because the term of the Lease, and the expectation that Tenant would be able to use it for its entire term, was the basis for the parties' negotiations and calculations at the time of contracting concerning Tenant's obligation to pay rent and other consideration under the Lease. Thus, for the additional fact and reason that the Premises were not usable for the entire term of the Lease, it is impossible and impracticable for the Landlord and Tenant to continue performing their obligations under the Lease, the parties' mutual purpose for entering into the Lease has been frustrated, and the consideration Tenant was to receive under the Lease has failed.

23.     The COVID-19 crisis and the civil orders affecting Tenant's ability to operate a retail store at the Premises constitute a casualty under Article 16.4 of the Lease that rendered the Premises unusable, such that Tenant was entitled to a complete abatement of rent beginning on or before March 19, 2020.  Article 16.4 of the Lease states: "If, as a result of a fire or other casualty, all or any portion of the Premises shall not be usable by Tenant, for a period of more than fourteen (14) consecutive days, for the conduct of Tenant's business therein in substantially the same manner as prior to such fire or other casualty, the Fixed Rent and the Tax Payment that is otherwise due and payable hereunder for the Premises shall be reduced in the proportion that the number of square feet of usable area of the Premises that is not usable by Tenant by reason of such fire or other casualty for more than such fourteen (14) day period, bears to the total usable area of the Premises immediately prior to such fire or other casualty, which reduction of the Fixed Rent and Tax Payment shall be in effect for the period commencing on the date of the

6

applicable fire or other casualty, and ending on the date that Landlord Substantially Completes the restoration work described in Section 16.2 hereof."

24.     Because the Landlord was not able to restore the Premises, the abatement of rent was permanent and, indeed, the Lease terminated pursuant to law on the date Tenant closed its business in the Premises, March 19, 2020.

25.     Landlord had notice, and Tenant has given the Landlord sufficient written notice, of all the rights and remedies demanded in this complaint, including Article 16.

26.     Despite the protections granted Tenant under Article 16 of the Lease, and Tenant's rights as a result of the frustration of purpose of the Lease, the failure of its consideration, and the impossibility, illegality and impracticability of performance, Landlord has wrongly demanded that Tenant pay rent under the Lease for the period after Tenant was deprived of its use of the Premises, including, without limitation, a notice to cure default dated March 26, 2020, and a purported three day notice of termination dated June 8, 2020.

27.     Landlord's demands constitute a breach of the terms and conditions stated in Article 16 and related provisions, as well as Tenant's rights pursuant to law.

28.     Further, Landlord owes Tenant damages equal to the amount of rent and other expenses paid in advance for the month of March 2020 during which Tenant was deprived of the use of the Premises, as well as damages for excess charges of rent and other expenses prior to the COVID-19 crisis.

2047684.2 30041-0001-000

## COUNT ONE
## BREACH OF CONTRACT

29.     Tenant repeats, realleges, and incorporates all prior paragraphs.

30.     Prior to the effective date of the Lease's termination and/or rescission, which occurred on or before March 19, 2020, the Lease constituted a binding enforceable contract.

31.     Landlord breached the contract by, among other things: demanding Tenant pay rent and other expenses that were not owed under the Lease; demanding, collecting and subsequently failing to reimburse Tenant for excess charges paid in advance under the Lease before the COVID-19 crisis; later failing to reimburse Tenant for the prorated amount of the rent, charges and other expenses attributable to the period that Tenant has been deprived of its use of the Premises; serving a purported notice to cure default and a purported three day termination notice in violation of Tenant's rights and the notice provisions of the Lease; and taking such other actions as are inconsistent with Tenant's rights.

32.     Tenant performed all of its obligations under the Lease except those that were waived, excused or rendered impossible and/or impracticable.

33.     As a direct and proximate result of Landlord's breach of contract, Tenant suffered the damages alleged hereinabove.

34.     Tenant is entitled to a judgment against Landlord in an amount to be proven at trial.

## COUNT TWO
## DECLARATORY RELIEF

35.     Tenant repeats, realleges, and incorporates all prior paragraphs.

36.     Tenant's ability to operate a retail store at the Premises was the express purpose of the Lease.

2047684.2 30041-0001-000

37.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering into the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered into the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense. When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, The Lease's object and purpose became impossible and impracticable, and Tenant was deprived of the consideration it received in exchange for entering into the Lease.

38.     Although necessary, the sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was executed.

39.     An actual controversy exists between Tenant and Landlord concerning their respective rights under the Lease, and Tenant has no adequate remedy at law. Specifically, the parties dispute:

    a.  Whether the Lease terminated as of March 19, 2020 pursuant to the Lease and applicable law;

    b.  Alternatively, whether the obligation to pay rent and expenses were abated from and after March 19, 2020,

    c.  Alternatively, for what period from and after March 19, 2020 the obligation to pay rent and expenses abated if the abatement was not permanent despite the few remaining months left on the term of the Lease and the interruption or impairment of Tenant's use of the Premises;

    d.  Whether there was a frustration of purpose of the Lease,

e.   Whether the continued operation of the Lease was illegal, impossible, or impracticable;

f.   Whether there was a failure of consideration under the Lease;

g.   Whether a casualty occurred that rendered the Premises unusable under Article 16 of the Lease;

40.   The parties further dispute the effects of the foregoing on the Lease's Term, expiration, and the continuing obligations, if any, of the parties.

41.   Therefore, Tenant seeks a judgment declaring the following:

a.   That the Lease terminated as of March 19, 2020 pursuant to the Lease and applicable law;

b.   Alternatively, that the rent and expenses under the Lease abated from and after March 19, 2020,

c.   Alternatively, if the abatement of rent and expenses was not permanent despite the few remaining months left on the term of the Lease and the interruption or impairment of Tenant's use of the Premises, that the rent and expenses abated for a period in the discretion of the Court from and after March 19, 2020;

d.   That there was a frustration of purpose of the Lease,

e.   That the continued operation of the Lease was illegal, impossible, or impracticable;

f.   That there was a failure of consideration under the Lease;

g.   That a casualty occurred that rendered the Premises unusable under Article 16 of the Lease;

h.   The effects of the foregoing on the Lease's Term and expiration;

10

      i.    That the parties have no continuing obligations to one another under the Lease from and after March 19, 2020 (or another date in the discretion of the Court) when Tenant was forced to suspend retail operations, which occurred on or before March 19, 2020, and at all times thereafter.

42.    In addition, Tenant seeks a judgment declaring that Landlord's purported notice to cure default and notice of termination were ineffective and of no legal consequence, because Tenant was not in default, because the Lease had already terminated, and because Landlord failed to respect the notice provisions of the Lease.

## COUNT THREE
## RESCISSION
### (Rescission/Cancellation of Lease)

43.    Tenant repeats, realleges, and incorporates all prior paragraphs.

44.    Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering into the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered into the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

45.    When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, the Lease's object and purpose became impossible and impracticable, and Tenant was deprived of the consideration it received in exchange for entering into the Lease.

46.    The sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was executed.

47.     An actual controversy exists between Tenant and Landlord concerning their respective rights under the Lease, and Tenant has no adequate remedy at law.

48.     In addition to, and/or in the alternative to, Tenant's claim for declaratory relief regarding the termination of the Lease, Tenant is entitled to judicial rescission of the Lease, as a result of the frustration of purpose of the Lease, the illegality, impossibility and impracticability of the Lease, and/or the failure of consideration, effective on such date as the Court determines based on the evidence presented at trial.

**COUNT FOUR**
**REFORMATION OF LEASE**

49.     Tenant repeats, realleges, and incorporates all prior paragraphs.

50.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering into the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered into the Lease. Indeed, without Tenant's ability to use the Premises for a retail store, the transaction between the parties that resulted in the Lease makes no sense.

51.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, the Lease's object and purpose became impossible and impracticable, and Tenant was deprived of the consideration it received in exchange for entering into the Lease.

52.     This sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was executed.

53.     The Parties would not have entered into the Lease had they known that Tenant would have been unable to operate a retail apparel store at the Premises, and Tenant's ability to

use the Premises as a retail apparel store was the sole consideration Tenant received under the Lease.

54.     It was the Parties' true intent that Tenant would not pay rent or other consideration for the Premises if such use was rendered impossible or impracticable. Had the Parties been able to foresee the events of the COVID-19 crisis at the time of contracting, the Parties would have provided language stating their true intent expressly.

55.     An actual controversy exists between Tenant and Landlord concerning their respective rights under the Lease, and Tenant has no adequate remedy at law.

56.     In the alternative to Tenant's claims related to the termination and rescission of the Lease, Tenant is entitled to judicial reformation of the Lease to reflect the Parties' true intent that Tenant would have no obligation to pay rent once it was deprived of the use of the Premises and that the Lease would terminate automatically when Tenant was deprived of its use of the Premises as originally contemplated by the Lease, or that the amount of rent for the Term would have otherwise been adjusted to account for the portion of the Lease's Term during which Tenant could not operate a retail store in the Premises.

## COUNT FIVE
## MONEY HAD AND RECEIVED

57.     Tenant repeats, realleges, and incorporates all prior paragraphs.

58.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering into the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered into the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

13

59.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, the Lease's object and purpose became impossible and impracticable, and Tenant was deprived of the consideration it received in exchange for entering into the Lease.

60.     This sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was executed.

61.     The Parties would not have entered into the Lease had they known that Tenant would have been unable to operate a retail apparel store at the Premises, and Tenant's ability to use the Premises as a retail store was the sole consideration it received under the Lease.

62.     Tenant has previously paid rent and other consideration to the Landlord, in an amount to be proven at trial, for a period of time that Tenant was unable to operate a retail store at the Premises.

63.     The Landlord benefited from these payments to Tenant's detriment.

64.     Under principles of good conscience, Landlord should not be allowed to retain the rent and other consideration paid for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

65.     Tenant is entitled to a judgment in its favor equal to the sums that Tenant has overpaid as rent and as other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease or after which the Lease terminated pursuant to law.

## COUNT SIX
## UNJUST ENRICHMENT

66.     Tenant repeats, realleges, and incorporates all prior paragraphs.

67.     Tenant's ability to operate a retail store at the Premises was the parties' mutual purpose in entering into the Lease, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Tenant would not have entered into the Lease. Indeed, without Tenant's ability to use the Premises, the transaction between the parties that resulted in the Lease makes no sense.

68.     When Tenant was forced to suspend all retail operations at the Premises, the purpose of the Lease was frustrated and impossible to effectuate due to no fault of the Tenant, the Lease's object and purpose became impossible and impracticable, and Tenant was deprived of the consideration it received in exchange for entering into the Lease. As a result, the Lease terminated and became void.

69.     This sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease was executed.

70.     The Parties would not have entered into the Lease had they known that Tenant would have been unable to operate a retail apparel store at the Premises, and Tenant's ability to use the Premises as a retail store was the sole consideration it received under the Lease.

71.     Tenant has overpaid rent and other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises.

72.     The Landlord was enriched as a result of these payments at Tenant's expense.

2047684.2 30041-0001-000

73.     Under principles of good conscience, Landlord should not be allowed to retain the rent and other consideration paid for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

74.     Tenant is entitled to restitution of the sums that Tenant has previously overpaid as rent and as other consideration to the Landlord, in an amount to be proven at trial, for the period of time that Tenant was unable to operate a retail store at the Premises as originally contemplated by the Lease.

## PRAYER FOR RELIEF

WHEREFORE, Tenant respectfully requests that this Court enter judgment:

a.      Awarding damages to Plaintiff in an amount to be proven at trial;

b.      Declaring that the Lease terminated pursuant to law effective on or before March 19, 2020;

c.      Alternatively, that the obligation to pay rent and expenses under the Lease abated from and after March 19, 2020,

d.      Alternatively, if the abatement of rent and expenses was not permanent despite the few remaining months left on the term of the Lease and the interruption or impairment of Tenant's use of the Premises, that the rent and expenses abated for a period in the discretion of the Court from and after March 19, 2020;

e.      That there was a frustration of purpose of the Lease,

f.      That the continued operation of the Lease was illegal, impossible, or impracticable on and after March 19, 2020;

g.      That there was a failure of consideration under the Lease;

16

h.      That a casualty occurred that rendered the Premises unusable under Article 16 of the Lease;

i.      That the parties had and have no continuing obligations to one another under the Lease from and after March 19, 2020 (or another date in the discretion of the Court);

j.      Such other effects of the foregoing on the Lease's Term and expiration as the Court deems just and proper;

k.      Declaring that Landlord's purported notice to cure default and notice of termination were ineffective and of no legal consequence, because Tenant was not in default, because the Lease had already terminated, and/or because Landlord failed to respect the notice provisions of the Lease.

l.      In the alternative, declaring that the Lease was equitably rescinded effective on or before March 19, 2020;

m.      In the alternative, granting equitable reformation of the Lease to reflect the Parties' true intent that Tenant would have no obligation to pay rent while it was deprived of the use of the Premises and that the Lease would terminate automatically when Tenant was deprived of its use of the Premises as originally contemplated by the Lease, or adjusting the amount of rent and expenses for the portion of the Lease's Term during which Tenant could not operate a retail store in the Premises;

n.      Ordering Landlord to reimburse and give restitution to Tenant for the payment of rent and other expenses paid for the period that Tenant was deprived of its use of the Premises as originally contemplated by the Lease;

o.      Such other and further relief that this Court may deem just and proper.

17

2047684.2 30041-0001-000

Dated: June 12, 2020

**DAVIS & GILBERT LLP**

By: /s/ Joshua H. Epstein
Joshua H. Epstein (JE-2187)
Jesse B. Schneider (JS-4808)
1740 Broadway
New York, NY 10019
212 468-4800

**ROBINS KAPLAN LLP**
Lisa M. Coyle (LC-6750)
Robins Kaplan LLP
399 Park Avenue, Suite 3600
New York, NY 10022
212-980-7400

Michael A. Geibelson (*pro hac vice* pending)
Daniel Allender (*pro hac vice* pending)
Robins Kaplan LLP
2049 Century Park East Ste. 3400
Los Angeles, CA 90067
310-550-0130

*Attorneys for The Gap, Inc.*