**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE GAP, INC., | Case No. 20-cv-4541 (LTS) (KHP) |
|     Plaintiff/Counterclaim Defendant, | |
| v. | |
| PONTE GADEA NEW YORK LLC, | |
|     Defendant/Counterclaimant. | |

**DEFENDANT/COUNTERCLAIMANT PONTE GADEA NEW YORK LLC'S**
**MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT AND IN OPPOSITION TO THE GAP, INC.'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.    Ponte Gadea Is Entitled to Summary Judgment on Its Counterclaims Because Gap Is Not Excused From Its Obligation to Pay Rent .................................................................. 2

    A.    Gap Admits It Breached the Lease ................................................................. 3

    B.    Gap's Claims and Affirmative Defenses of Impossibility of Performance And Frustration of Purpose Fail Because Gap Did Not Vacate the Premises ............... 3

    C.    The *Force Majeure* Provision Also Bars Gap's Claims/Affirmative Defenses ..... 5

    D.    As A Matter of Fact, No Reasonable Person Could Find that Gap's Performance Under the Lease Is Impossible or Substantially Frustrated ............... 7

        1.    Gap's Declarations Are Not Admissible Evidence, Have No Probative Value, And Do Not Create an Issue of Material Fact ................................. 8

        2.    Gap Is Actually Operating the Premises As a Retail Store ...................... 11

        3.    Gap Is Using the Premises As Contemplated in the Lease ...................... 12

        4.    Gap's Economic Justification Arguments Fail .......................................... 14

        5.    The Case Law Gap Relies On Is Readily Distinguishable ....................... 15

    E.    Gap's Casualty Argument Fails ................................................................. 16

II.    Gap Fails to Raise a Question of Material Fact To Preclude Summary Judgment on the Remaining Claims and Defenses .................................................................................. 18

    A.    Gap's Rescission Claim Fails ................................................................. 18

    B.    Gap's Money Had and Received And Unjust Enrichment Claims Fail ............... 19

    C.    Gap's Reformation Claim Fails .................................................................. 20

III.    Gap Should be Required to Pay Use and Occupancy Pendente Lite ................................ 23

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*112 W. 34th St. Assocs., LLC v. 112-1400 Trade Prop. LLC*,
  95 A.D.3d 529 (1st Dep't 2012) ............................................................................5

*407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*,
  23 N.Y.2d 275 (N.Y. 1968) ..............................................................................7, 14

*45 Broadway Owner LLC v. NYSA-ILA Pension Tr. Fund*,
  107 A.D.3d 629 (1st Dep't 2013) ....................................................................17, 18

*Amerol Corp. v Am. Chemie-Pharma, Inc.*,
  CV 04-0940 (JO), 2006 WL 721319 (E.D.N.Y. Mar. 17, 2006)...........................22

*Barbagallo v. Marcum LLP*,
  820 F. Supp. 2d 429 (E.D.N.Y. 2011) ..................................................................23

*Belcher v. Serriano*,
  No. 95-CV-1340, 1998 WL 173169 (N.D.N.Y. Apr. 9, 1998)...............................22

*Benderson Dev. Co. v. Commenco Corp.*,
  44 A.D.2d 889 (4th Dep't 1974), *aff'd*, 337 N.E.2d 130 (N.Y. 1975)...................15

*Bickerstaff v. Vassar College*,
  196 F.3d 435 (2d Cir. 1999)...........................................................................11, 21

*Burke v State Univ. of New York, Inst. of Tech. at Utica/Rome*,
  3:12-CV-1013, 2012 WL 5986548 (N.D.N.Y. Nov. 29, 2012)..............................23

*Bush v. Protravel Int'l, Inc.*,
  746 N.Y.S.2d 790 (Richmond Cty. Civ. Ct. 2002).........................................15, 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................7, 8

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*,
  735 F.3d 114 (2d Cir. 2013)...............................................................................7

*Colonial Operating Corp. v. Hannan Sales & Serv.*,
  36 N.Y.S.2d 745 (2d Dep't 1942), *modified by* 265 A.D. 411 (2d Dep't 1943) ......................4

*Culver & Theisen, Inc. v. Starr Realty Company (NE) LLC*,
  307 A.D.2d 910 (2d Dep't 1994) ..........................................................................19

*Curtis Props Corp. v. Greif Cos.*,
  236 A.D.2d 237 (1st Dep't 1997) ..........................................................................20

*Dellacava v. Painters Pension Fund of Westchester & Putnam Ctys.*,
   851 F.2d 22 (2d Cir. 1988)........................................................................................9

*Echelon Int'l Corp. v. Am. W. Airlines, Inc.*,
   85 F. Supp. 2d 313 (S.D.N.Y. 2000)........................................................................6

*F.D.I.C. v. Giammettei*,
   34 F.3d 51 (2d Cir. 1994)........................................................................................7

*Gelita, LLC v. Second Ave., LLC*,
   No. 651538/2012, 2013 WL 2728386 (Sup. Ct. N.Y. Cty. June 10, 2013)...............4

*Goenaga v. March of Dimes Birth Defects Found.*,
   51 F.3d 14 (2d Cir. 1995)........................................................................................7

*Hanna v. Plumer*,
   380 U.S. 460 (1965)................................................................................................24

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010)....................................................................................9

*Hizington v. Eldred Ref. Co. of New York*,
   235 A.D. 486 (4th Dep't 1932)................................................................................4

*Hughes Network Sys., Inc. v. InterDigital Comms Corp.*,
   17 F.3d 691 (4th Cir. 1994)....................................................................................24

*I Q Originals, Inc. v. Bos. Old Colony Ins. Co.*,
   85 A.D.2d 21 (1st Dept. 1982)..........................................................................17, 18

*In re Livent, Inc. Noteholders Sec. Litig.*,
   355 F Supp 2d 722 (S.D.N.Y. 2005)........................................................................7

*Jack Kelly Partners LLC v. Zegelstein*,
   140 A.D.3d 79 (1st Dep't 2016) ............................................................................15

*Jones v Bryant Park Mkt. Events, LLC*,
   658 F. App'x 621 (2d Cir 2016) ............................................................................23

*Khezrie v. Greenberg*,
   No. 98-CV-3638 (ERK), 2001 WL 1922664 (E.D.N.Y. Dec. 11, 2001), *aff'd*, 53 F. App'x
   592 (2d Cir. 2002)..................................................................................................22

*Knorr v. Jack & Al, Inc.*,
   38 N.Y.S.2d 406 (N.Y. Sup. Ct. 1942) ...................................................................4

*Kwon v. Yun*,
   606 F. Supp. 2d 344 (S.D.N.Y. 2009)......................................................................7

*Lakshmi Grocery & Gas, Inc. v. GRJH, Inc.*,
   138 A.D.3d 1290 (3d Dep't 2016) ...................................................................19

*Messinger v. JPMorgan Chase Bank, N.A.*,
   126 F. Supp. 3d 376 (S.D.N.Y. 2015) ............................................................11

*Millton Park, Inc. v. Am. Felt and Filter Co.*,
   180 A.D.2d 235 (3d Dep't 1992) ...................................................................16

*Mindspirit, LLC v Evalueserve Ltd.*,
   346 F. Supp. 3d 552 (S.D.N.Y. 2018) ............................................................20

*Nordwind v. Rowland*,
   584 F.3d 420 (2d Cir. 2009) ..........................................................................20

*Olin Corp. v. Am. Home Assur. Co.*,
   704 F.3d 89 (2d Cir. 2012) ............................................................................17

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994) ..........................................................................23

*Price v. Cushman & Wakefield, Inc.*,
   808 F. Supp. 2d 670 (S.D.N.Y. 2011) .............................................................9

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ............................................................................10

*Rockland Dev. Assoc. v. Richlou Auto Body, Inc.*,
   173 A.D.2d 690 (2d Dep't 1991) ...................................................................14

*Ross v. Food Specialties, Inc.*,
   6 N.Y.2d 336 (N.Y. 1959) .............................................................................20

*S.H. Kress & Co. v. LPN 1st Ave. Corp.*,
   235 N.Y.S.2d 339 (Sup Ct. N.Y. Cty. 1962) .................................................20

*Sage Realty Corp. v. Jugobanka, D.D.*,
   No. 95 CIV. 0323 RJW, 1998 WL 702272 (S.D.N.Y. Oct. 8, 1998) ................5

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ..........................................................................11

*Segal Co. (E States), Inc. v. 333W34 SLG Owner LLC*,
   Index No. 650244/2015, 2016 WL 2770277 (Sup. Ct. N.Y. Cty. May 11, 2016)....................4

*Solomatina v Mikelic*,
   370 F. Supp. 3d 420 (S.D.N.Y. 2019) ............................................................20

*Sperry, Int'l Trade, Inc. v. Gov't of Israel,*
    670 F.2d 8 (2d Cir. 1982)...................................................................................24

*Stryker Sec. Grp. Inc. v. Elite Investigations Ltd.,*
    170 A.D.3d 553 (1st Dep't 2019) .......................................................................19

*Thornton Ridge Dev. Co., Inc. v. Patterson & Schmidt, Inc.,*
    37 N.Y.S.2d 566 (Sup. Ct. N.Y. Cty. 1942) ........................................................4

*Tokio Marine and Fire Ins. Co. v. McDonnell Douglas Corp.,*
    617 F.2d 936 (2d Cir. 1980)..................................................................................6

*U.S. Russia Inv. Fund v. Neal & Co., Inc.,*
    97-CV-1788 (DC), 1998 WL 557606 (S.D.N.Y. Sept. 2, 1998) ..........................22

*United Magazine Co. v. Murdoch Magazines Distrib.,*
    393 F. Supp. 2d 199 (S.D.N.Y. 2005)..................................................................22

*Weider Health and Fitness v. Austex Oil Ltd.,*
    No. 17-cv-2089 (RMB)(OTW), 2018 WL 8579820 (S.D.N.Y. Dec. 19, 2018).....22

*Winmar Co., Inc. v. Teachers Ins. And Annuity Ass'n of Am.,*
    870 F. Supp. 524 (S.D.N.Y. 1994) ......................................................................22

*Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi,*
    215 F.3d 247 (2d Cir. 2000)................................................................................22

**Rules**

Federal Rules of Evidence 401 ..............................................................................10

Federal Rules of Evidence 702 ..............................................................................10

Federal Rules of Civil Procedure
    Rule 56 .........................................................................................1, 3, 8, 23

Federal Rules of Civil Procedure
    Rule 65 .............................................................................................23, 24

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)...................................................................9

https://www.natlawreview.com/article/20-retailers-to-watch-bankruptcy-filing-second-half-2020
    .......................................................................................................................25

https://www.sfchronicle.com/business/amp/Gap-s-future-lies-with-Bankruptcy-Court-
    7943518.php; .................................................................................................25

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant/Counterclaimant Ponte Gadea New York LLC ("Ponte Gadea") respectfully submits this memorandum of law in further support of its Motion for Summary Judgment on all of the parties' claims and counterclaims and in opposition to The Gap, Inc.'s ("Gap") cross-motion for summary judgment.

### PRELIMINARY STATEMENT

Ponte Gadea is entitled to summary judgment on its Counterclaims because Gap has admitted all necessary facts to prove Gap's breach of the Lease.  Gap admits that it has not paid any rent for the Premises since March 2020.  Gap admits that Ponte Gadea served a Notice to Cure under the Lease based on Gap's failure to pay rent and that Gap did not cure the default.  Gap further admits that Ponte Gadea served Gap with a Notice of Termination under the Lease, terminating Gap's tenancy effective June 15, 2020.  And Gap admits that the Lease was in fact terminated.  Gap also admits that it, nonetheless, failed to vacate and surrender the Premises to Ponte Gadea, entitling Ponte Gadea to Holdover Rent beginning on June 15, 2020.  On these facts, Ponte Gadea, is entitled to judgment in the amount of **$6,986,112.48**.

In opposing Ponte Gadea's summary judgment motion, Gap argues that it is excused from paying any rent to Ponte Gadea because COVID-19 has entirely frustrated the Lease and/or rendered Gap's performance impossible.  The law is clear, though, that Gap is estopped from relying on these common law doctrines to excuse its non-performance because Gap failed to vacate and surrender the Premises.  Additionally, the *Force Majeure* clause in the Lease bars Gap's reliance on these doctrines.  Thus, Gap's frustration of purpose and impossibility affirmative defenses fail, entitling Ponte Gadea to judgment on its Counterclaims.

Moreover, Gap has failed to submit any competent evidence to create a genuine issue of material fact to support either its affirmative defenses or the claims subject to its cross-motion for summary judgment.  The declarations that Gap submitted as evidence are insufficient to preclude

summary judgment because they are replete with speculation and conjecture provided by individuals who lack personal knowledge and make unsupported and unspecified claims.

Additionally, Gap's declarations contain false statements that are readily contradicted by admissible evidence. For example, Ms. Rondholz, who admits lacking personal knowledge, declares, "***Tenant does not conduct curbside or ship from store at the Premises***." (Rondholz. Decl. (Dkt. No. 31), ¶ 21.) This is false. In an August 18, 2020 email, Ms. Catie DeTullio, Gap's tenant representative for the Premises, admits that curbside pickup has been available at the Premises since approximately June 12, 2020. (*See* Ponte Gadea's Additional Statement of Material Undisputed Facts and Reply to Gap' Response to Ponte Gadea's Statement of Undisputed Facts Pursuant to Local Rule 56.1 (the "Add'l 56.1"), ¶ 11.) Additionally, on September 3, 2020, Ponte Gadea's property manager purchased clothing from both retail stores that Gap operates at the Premises by using curbside pickup. (*Id.* ¶ 16.) Additionally, Gap is operating at least two other stores just blocks away in New York City for *in person shopping*. If Gap can operate those retail stores, there is no reason it cannot operate its retail store at the Premises. (*Id.* ¶¶ 17, 21.) Based on this admissible evidence, no reasonable person could find that Gap's performance of the Lease was impossible or frustrated, necessitating denial of Gap's cross-motion for summary judgment.

For these, and the reasons below, Ponte Gadea is entitled to judgment in its favor and dismissal of Gap's claims in their entirety.

## ARGUMENT

I.   **Ponte Gadea Is Entitled to Summary Judgment on Its Counterclaims Because Gap Is Not Excused From Its Obligation to Pay Rent**

Ponte Gadea is entitled to summary judgment because (1) Gap admits that it breached the Lease by failing to pay rent; (2) Gap is estopped from relying on the common law doctrines of frustration of purpose and impossibility of performance because it failed to vacate the Premises;

(3) the *Force Majeure* provision in the Lease bars Gap's non-payment of rent claims/affirmative defenses; (4) Gap fails to submit competent evidence to create a genuine issue of material fact; (5) the case law Gap relies on is inapposite, and (6) COVID-19 is not a casualty under the Lease.

### A.    Gap Admits It Breached the Lease

Gap admits the material facts necessary to enter judgment in Ponte Gadea's favor.  Gap admits that: (1) it failed to pay Fixed Rent since March 2020, *see* Gap's 56.1 Response (Dkt. No. 36) ¶¶ 28, 31-32, 48;[1] (2) Ponte Gadea served a Notice to Cure demanding Gap cure by paying April and May 2020 Fixed Rent, *id.* ¶¶ 43-46; (3) Gap failed to cure, *id.* ¶¶ 47-49; (4) Ponte Gadea served a Notice of Termination terminating Gap's tenancy effective June 15, 2020, *id.* ¶¶ 51-52; (5) the Lease was terminated, *id.*; (6) Gap has (still) failed to vacate and surrender the Premises to Ponte Gadea, *id.* ¶ 53; and (7) Gap has not paid Ponte Gadea any Rentals since March 2020, *id.* ¶¶ 54-56.[2]

As all of these facts are undisputed, Ponte Gadea is entitled to judgment in the total amount of unpaid Rentals and Holdover Rent from April 2020 through September 2020, totaling **$6,986,112.48**, and continuing to accrue at a rate of $1,230,216.93 each month, along with attorneys' fees, costs, and interest.  (Add'l 56.1 ¶¶ 27-28; Ponte Gadea's 56.1 Statement (Dkt. No. 18) ¶¶ 55-56.)

### B.    Gap's Claims and Affirmative Defenses of Impossibility of Performance And Frustration of Purpose Fail Because Gap Did Not Vacate the Premises

Gap's entire case rests on the theory that the COVID-19 pandemic and Executive Orders rendered Gap's performance impossible and/or had completely frustrated the purpose of the Lease.

---

[1] For the avoidance of doubt, Gap makes the same admissions in its Rule 56.1 Statement ¶¶ 44-46, 57. (Dkt. No. 30).
[2] Gap also failed to pay any Rental for September 2020 and has not surrendered the Premises.  (Add'l 56.1 ¶¶ 23-26.)

(Opp. Br. at 10-13, 23-25.)[3]  Gap, however, cannot rely on these common law doctrines to excuse its non-payment of rent because Gap admittedly failed to vacate and surrender the Premises.

Gap's case law recites the rule.  Gap relies on *Colonial Operating Corp. v. Hannan Sales & Serv.,* 36 N.Y.S.2d 745, 746 (2d Dep't 1942), *modified by* 265 A.D. 411 (2d Dep't 1943) (holding lease was not frustrated), for the proposition that a tenant's performance under a lease is excused if "the purpose of a lease becomes frustrated or impossible to effectuate through no fault of the tenant."  (Opp. Br. at 11.)  However, *Colonial Operating* also held that even though "the court below could find the essential purpose of the lease has been frustrated, "***[t]he tenant [] was bound to pay rent while continuing in possession***."  36 N.Y.S.2d at 745 (emphasis added).  Thus, "all the rent sued for was payable."  *Id.*

This rule is well-settled.  *Hizington v. Eldred Ref. Co. of New York*, 235 A.D. 486, 489 (4th Dep't 1932) ("It would be incongruous and inconsistent, as well as unjust, to permit a tenant to remain in possession of leased property, and, when sued for the rent, to plead an eviction by showing facts and circumstances which would have justified him in leaving the premises.").[4]

Because Gap failed to pay Ponte Gadea any Rentals since March 2020, but nonetheless remains in possession of the Premises through today, ***as Gap admits***, Ponte Gadea is entitled to summary judgment in its favor.

---

[3] "Opp. Br." refers to Gap's Memorandum of Law in Opposition to Ponte Gadea's Motion for Summary Judgment and Cross Motion for Summary Judgment. (Dkt. No. 29.)

[4] *See also Segal Co. (E States), Inc. v. 333W34 SLG Owner LLC*, Index No. 650244/2015, 2016 WL 2770277, at *11 (Sup. Ct. N.Y. Cty. May 11, 2016) (quoting *Gelita, LLC v. Second Ave., LLC*, No. 651538/2012, 2013 WL 2728386, at *5 (Sup. Ct. N.Y. Cty. June 10, 2013) ("[E]ven if plaintiffs are entitled to termination [due to frustration of purpose], [tenant] is still liable to pay rent for the time it occupied the Premises."); *Knorr v. Jack & Al, Inc.*, 38 N.Y.S.2d 406 (N.Y. Sup. Ct. 1942) ("[T]he tenant, having remained in possession, was not entitled to claim that performance of the terms of the lease had been rendered impossible."); *Thornton Ridge Dev. Co., Inc. v. Patterson & Schmidt, Inc.*, 37 N.Y.S.2d 566, 567 (Sup. Ct. N.Y. Cty. 1942) ("It is unnecessary to consider what effect the orders of the Price Administrator, restricting the sales of automobiles, have upon the lease.  The defendant tenant was in possession for the period in question and so long as it is in possession it is liable for the rent.").

C.      **The _Force Majeure_ Provision Also Bars Gap's Claims/Affirmative Defenses**

Ponte Gadea is also entitled to summary judgment in its favor because the _Force Majeure_ provision plainly encompasses the governmental orders stemming from the COVID-19 public health emergency, and Gap's attempts to side-step its application are meritless.

The _Force Majeure_ provision in the Lease expressly anticipated that "governmental preemption of priorities or other controls in connection with a national or other public emergency," such as the governmental orders that temporarily required businesses to reduce their workforce in connection with the COVID-19 public health emergency, could affect the tenant's performance under the Lease.  The parties further agreed to _only_ apply the _Force Majeure_ provision to defaults of certain non-monetary obligations.  Gap does not dispute this reading of the lease.  (_See_ Opp. Br. at 14 ("[The Lease] contains a _definition_ of a force majeure event, in Section 1.7(H), that is only used once, in Section 21.1(F), relating to covenants _other than_ rent.") (emphasis in original).)[5] Consequently, the _Force Majeure_ provision of the Lease does not apply to excuse a default of monetary obligations, such as the non-payment of Fixed Rent.

In fact, the only reasonable interpretation of the Lease is that the parties _intended_ that a _Force Majeure_ Event could excuse non-monetary defaults, but would not excuse monetary defaults.  _See 112 W. 34th St. Assocs., LLC v. 112-1400 Trade Prop. LLC_, 95 A.D.3d 529, 531 (1st Dep't 2012) ("Courts are obliged to interpret a [lease] so as to give meaning to all of its terms.") (citations omitted).  Therefore, Gap's non-payment of Rentals constituted a breach of the Lease that is not excused by the _Force Majeure_ provision or the doctrines of impossibility of performance or frustration of purpose.  _See e.g._, _Sage Realty Corp. v. Jugobanka, D.D._, No. 95 CIV. 0323 RJW,

---

[5] For example, Gap speculates that lines of customers would form outside of the Premises if Gap were to operate in compliance with governmental orders requiring social distancing, which would violate Section 4.5(B) of the Lease. (Opp. Br. at 6.)  Fortunately for Gap, due to the _Force Majeure_ provision, this non-monetary breach would be excused. **_Indeed, as Gap's example demonstrates, the Force Majeure clause does apply, just not to monetary defaults_.**

1998 WL 702272, at *2 (S.D.N.Y. Oct. 8, 1998) (holding frustration of purpose defense unavailable where the lease contemplates the force majeure event) (citations omitted).

Next, Gap's argument that summary judgment should be denied because the Lease is "ambiguous" should be rejected out of hand.  Not only is Gap's superficial claim of "ambiguity" contradicted by Gap's stated interpretation of the Lease, *see* Opp. Br. at 14, but Gap also fails to offer any alternative reading of the Lease, which is required.  *Echelon Int'l Corp. v. Am. W. Airlines, Inc.*, 85 F. Supp. 2d 313, 317 (S.D.N.Y. 2000) ("Ambiguity requires the existence of more than one reasonable interpretation of the contract.").  Instead, Gap parrots case law stating that extrinsic evidence can be used where an agreement is "susceptible to different reasonable interpretations," which is insufficient to create a genuine issue of material fact.  (Opp. Br. at 16); *see Tokio Marine and Fire Ins. Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir. 1980) (affirming summary judgment on unambiguous contract).

Gap's remaining arguments also fail because Gap does not (and cannot) argue that the Executive Orders do not fall within the four corners of the Force Majeure Event definition.  Rather, Gap contends that the words "global pandemic" do not appear in the definition.  (Opp. Br. at 15.) But Gap's particular description of the event is not what controls; it is the language of the Lease, which explicitly encompasses governmental orders "in connection with a national or other public emergency," which clearly captures the COVID-19 global pandemic.

Gap also makes the bizarre claim that the *Force Majeure* provision cannot apply because *Gap* made a business decision "to close all its North American stores including the Lexington store before New York's state-wide shutdown" and "Gap's decision and the bases for that decision are not among Section 1.7(H)'s list." *Id.*  This argument does not make any sense.  First, Gap has alleged that it was forced to close its doors "in order to comply with applicable governmental

orders and guidelines and to protect the health and safety of its employees, customers, and the surrounding community."  (Compl. at ¶¶ 20, 23; *see also* Opp. Br. at 13 ("Gap was forced to close this store because of an unforeseen and globally devastating pandemic and ensuing governmental orders….").)  Gap cannot allege on one hand that it was forced to close its doors due to COVID-19 and related government orders, yet, on the other hand, claim the *Force Majeure* provision does not apply because it was Gap's "own" decision to close its doors.  Indeed, if it is true that Gap simply made a business decision to close its stores at the Premises, then its common law defenses fail as a matter of law.  *See 407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp.,* 23 N.Y.2d 275, 281 (N.Y. 1968) (frustration of purpose and impossibility defenses unavailable where impossibility was "occasioned only by financial difficulty or economic hardship" and the purpose was only frustrated because of a "business decision").

Because the parties contemplated the types of governmental orders arising from a COVID-19 type event and allocated the risk of loss in the Lease, Gap's failure to pay Rentals is not excused. Thus, summary judgment in Ponte Gadea's favor should be granted.

> **D.    As A Matter of Fact, No Reasonable Person Could Find that Gap's Performance Under the Lease Is Impossible or Substantially Frustrated**

Ponte Gadea has met its burden to establish the absence of a genuine dispute of material fact.[6]  Thus, the burden shifts to Gap to come forward with sufficient evidence to raise a question

---

[6] Gap incorrectly recites the burden of proof and contends Ponte Gadea must *disprove* Gap's claims and affirmative defenses.  (Opp. Br. at 10, 13.)  Ponte Gadea's burden in moving against Gap, who bears the ultimate burden of proof on its claims and affirmative defenses, is "satisfied if [Ponte Gadea] can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Kwon v. Yun*, 606 F. Supp. 2d 344, 355 (S.D.N.Y. 2009) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)); *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (The plaintiff need not "support its motion with affidavits or other similar materials *negating*" the affirmative defense) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (emphasis added).  Ponte Gadea thoroughly satisfied this initial burden in its moving brief.  As such, the burden shifts to Gap to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013).  Further, unless Gap is able to come forward with evidence supporting each essential element of its claims and defenses, Ponte Gadea is entitled to summary judgment.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 355 F Supp 2d 722, 729 (S.D.N.Y. 2005).

of fact as to each essential element of its claims, which Gap cannot do, as Gap cannot rely on the common law doctrines of frustration of purpose and impossibility of performance.

However, even assuming that these common law doctrines applied, Gap's frustration of purpose and/or impossibility defenses would still fail because: (1) the declarations Gap submitted are not admissible evidence sufficient to create a genuine issue of material fact; (2) Gap is actually using and occupying the Premises as a retail store, including for curbside pickup, despite not paying rent since March 2020; (3) Gap has continuously used and occupied the Premises, including as a "first-class retail business," as contemplated by Article 4 of the Lease; (4) Gap's claimed "decline in foot traffic" and "destroyed … economic justification" for the Lease is not grounds for frustration of purpose or impossibility defenses; and, (5) Gap is operating other retail locations in New York City for in-person retail.

1.     **Gap's Declarations Are Not Admissible Evidence, Have No Probative Value, And Do Not Create an Issue of Material Fact**

As explained above, Gap's claims and affirmative defenses are entirely premised on the theory that Gap is excused from paying rent to Ponte Gadea because the COVID-19 pandemic caused Gap's performance to be impossible and/or frustrated the essential purpose of the Lease. Thus, in opposing Ponte Gadea's motion for summary judgment, Gap was required to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial'" to support its claims and affirmative defenses.  *Celotex*, 477 U.S. at 324.  Instead, Gap submitted declarations that must be disregarded because they are not based on personal knowledge, are filled with speculation and conjecture, and are not supported by specific facts.

Rule 56(c)(4) is clear that a "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Personal knowledge means "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." Black's Law Dictionary (11th ed. 2019). Further, Gap cannot rely on mere speculation, conclusory statements, or conjuncture, but must instead present affirmative and specific evidence showing a genuine issue for trial exists. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *Price v. Cushman & Wakefield, Inc.,* 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011).

The declarations of Ms. Rondholz, Ms. Adams, and Dr. Zenilman must be disregarded because they are not made on personal knowledge. (Dkt. Nos. 31, 35, 33.) Ms. Rondholz states that she is "responsible for a portfolio of over 200 Gap brand retail stores in New York, New Jersey and Connecticut" and is "fully familiar with the facts and circumstances set forth [in her declaration]." (Rondholz Decl. ¶ 1.) However, she does not state that she is responsible for the Premises at issue in this litigation or that she has any personal knowledge of the facts in her declaration. *Id*. Indeed, she admits throughout the declaration that her knowledge is based on information and belief. *Id.* ¶¶ 3, 6, 7, ("I am *informed and believe* … the object and purpose of the Lease impossible, impracticable, and illegal.") (emphasis added).

As to Ms. Adams, her declaration merely states that she "signed the Lease," but does not state that she had any involvement in the Lease negotiations or has personal knowledge of any of the statements made in her declaration, many of which are speculative and simply parrot Gap's allegations. (Adams Decl. ¶ 2.) Further, Ms. Adams' declaration fails to provide any relevant, specific details to support Gap's position, but instead parrots Gap's general position regarding intent and impossibility, which are simply too attenuated to create a genuine issue of fact. Accordingly, these declarations "have no probative value and may not be considered" on the parties motions for summary judgment. *Dellacava v. Painters Pension Fund of Westchester &*

9

*Putnam Ctys.*, 851 F.2d 22, 27 (2d Cir. 1988).

Moreover, Dr. Zenilman's declaration should be stricken because there is no indication that he has any information concerning the Premises, any specific steps that Gap could or should take to safely operate at the Premises, or any personal knowledge concerning the effect of COVID-19 in New York City during the time of the Executive Order, as Dr. Zenilman is based in Baltimore, Maryland.  (*See* Zenilman Decl.; *see also id.*, ¶ 14 (admitting lack of personal knowledge, relying instead on his "professional colleagues in New York" that he has "spoken with" regarding the "COVID-19 crisis in New York," which is inadmissible hearsay).)[7]

Likewise, these declarations should all be disregarded as inadmissible because they are filled with non-specific conjecture and speculation concerning Gap's purported ability to operate the Premises as a retail store under the Lease.  For example, the declarants all generally claim that Gap intended the store to be operated as a "first class" retail store and that COVID-19 has made it impossible and/or substantially frustrated Gap's ability to operate the Premises in that manner. (*See* Rondholz Decl. ¶ 14 ("The mandated social distancing and protective equipment necessary to operate at this location is wholly inconsistent with the operation of a first-class retail store"); Butala ¶ 14 ("impossible to operate a 'first-class retail business'"); Adams Decl. ¶ 12 ("impossible to successfully operate a first-class retail business"); Zenilman Decl. ¶ 25 (opining that governmental safety restrictions "will be required to continue for many months").)

However, none of the declarations identify any specific facts, as Gap is required to do, explaining why Gap is unable to perform its obligations under the Lease – either to pay rent or open and operate its retail store.  By way of example only, Gap offers no admissible evidence

---

[7] Similarly, if Gap submits Dr. Zenilman as an expert (which is not stated), his testimony should be disregarded because it is entirely unreliable, unsupported in methodology, and does not even provide an opinion concerning the Premises at issue.  Fed. R. Evid. 401, 702; *see also, e.g. Raskin v. Wyatt Co.*, 125 F.3d 55, 65-67 (2d Cir. 1997).

explaining the manner in which it operated at the Premises prior to March 19, 2020, explaining why this is the only manner that it can operate at the Premises, what steps it would need to take to operate the Premises in a reasonably safe manner, or why it is impossible for Gap to take those steps at these Premises. Instead, the declarants offer vague and conclusory statements that Gap's performance is impossible and wholly frustrated, which are insufficient. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. Instead, the non-movant must produce specific facts indicating that a genuine factual issue exists."); *Messinger v. JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 382 (S.D.N.Y. 2015) (disregarding self-serving affidavits based on vague, conclusory, and speculative statements, and granting summary judgment in defendant's favor).

2.   **Gap Is Actually Operating the Premises As a Retail Store**

Gap's claims and affirmative defenses also fail because they are predicated on false statements. The truth is that Gap is operating its retail store at the Premises for curbside pickup.

For example, in the (inadmissible) Rondholz Declaration, Gap declared that "Tenant does not conduct curbside or ship from store at the Premises." (Rondholz Decl. ¶ 21.) This is false. On August 17, 2020 (the day Ponte Gadea moved for summary judgment), the Banana Republic store also located at the Premises advertised to the public that curbside pickup was available from 10 am to 4 pm. (Add'l 56.1 ¶ 3.) Gap also confirmed that curbside pickup had been available since June 12, 2020. (*Id.* ¶ 11.) On September 3, 2020 (after Gap filed its opposition and cross-motion for summary judgment), Ponte Gadea's property manager purchased merchandise from both the Gap and Banana Republic retail stores at the Premises using curbside pickup. (*Id.* ¶ 16.) Additionally, both stores at the Premises were stocked with merchandise and there was no evidence that Gap was "currently in the process of moving out of the Premises as soon as practicable."

(*Compare* Rondholz Decl. ¶ 21, *with* Kang Decl. ¶¶ 19, 21, Exs. A, B.).

On these facts, no reasonable factfinder could find the Lease to be impossible or essentially frustrated. Quite the contrary, Gap is knowingly and intentionally using and occupying the Premises in defiance of the Lease for its own benefit, and to the detriment of Ponte Gadea.

### 3.   Gap Is Using the Premises As Contemplated in the Lease

Additionally, Gap's contention that performance under the Lease is impossible and/or essentially frustrated because it cannot operate a "'first class retail business' as it existed in 2005" misconstrues the Lease. (Opp. Br. at 14.)  Gap is attempting to rewrite the Lease to make "first class retail business" mean that Gap can *only* operate a retail store under the Lease *without* requiring customers to wear masks and installing plexiglass. (*See e.g. id.* at 1, 7, 20.)  This limited and self-serving interpretation of the Lease is belied by the plain terms of Article 4.

As an initial matter, Section 4.1 of the Lease does not require Gap to "operat[e] [] a 'first-class retail business," in the same exact manner as Gap and Banana Republic stores operated in 2005.  Section 4.1 provides that the Premises may be used "only for the operation of first-class retail business*es*," *not* a particular "first class retail business," as Gap contends.  Section 4.1 further clarifies that "first-class" refers to the *type* of retail business that is permitted to operate at the Premises.  It does not mean that Gap can only operate its business without plexiglass.  Specifically, Section 4.1 explains that "[d]iscount, promotional and off-price retailers shall *not* be considered to be 'first-class.'" (emphasis added).  The Lease then specifically identifies, "[b]y way of example only," retailers that "as *they* operate on the date of this Lease, shall not be deemed 'first-class," including Payless Shoes and TJ Maxx.  Lease § 4.1 (emphasis added).  Since Gap has not (and cannot) contend that COVID-19 has reduced Gap from a "first-class" retailer to a discount retailer, Gap's frustration of purpose and impossibility defenses fail.

Further, Section 4.1 merely refers to the type of merchandise associated with the Gap and

12

Banana Republic trade names when the Lease was executed, *not* Gap's operation of the Premises without plexiglass.  Section 4.1 specifies that Gap may use the Premises "for the sale of apparel and accessories and such other merchandise categories as are consistent with other stores operating under the Gap trade name and the Banana Republic trade name as of the date hereof."  Thus, Gap was permitted to use the Premises under the Gap and Banana Republic trade names, to sell clothing, as consistent with other Gap and Banana Republic stores in 2005.  Gap admits that it used the Premises under these trade names, and Gap does not contend (nor could it) that COVID-19 has made it impossible to operate the Premises under these trade names.

Separately, Section 4.5 of the Lease sets forth the "Retail Use" of the Lease.  Specifically, Section 4.5(B) expressly recognizes that Gap will use the Premises to, among other things, store merchandise and proscribes that Gap may "store in the Premises only the merchandise that Tenant sells on a retail basis at the Premises."  Gap admits that it "continued to use the Premises to store its merchandise."  (Gap's 56.1 Response ¶ 37.)  Thus, by Gap's own admission, it is operating the Premises within the bounds of the Lease's defined "Retail Use" and no reasonable factfinder could, therefore, find that Gap's performance under the Lease was impossible and/or entirely frustrated.

Gap is also continuing to use the Premises to advertise its goods and services as contemplated by Section 4.4 of the Lease.  While Gap disputes that it was "able to use the Premises in a manner consistent with the Permitted Uses under the Lease," Gap does not dispute that it "continued to use the Premises to advertise its goods."  (*Id.* ¶ 36.)  Further, the Kang Declaration confirms that Gap continued to advertise its merchandise in the Premises' store front windows, as of August 17, 2020 and September 3, 2020.  (Add'l 56.1 ¶ 14. )  On this basis as well, no reasonable factfinder could conclude that the Lease was entirely frustrated and performance was impossible, as Gap continues to use and occupy the Premises as described in Article 4.

4.      **Gap's Economic Justification Arguments Fail**

Further, Gap's claims that the Lease is frustrated and/or impossible to perform because, among other things, (1) "[a]s a result of New York's statewide shutdown, households were forced to shelter in place and foot traffic on Lexington Avenue never recovered" and (2) "the precipitous decline in foot traffic and office workers destroyed the entire economic justification for the consideration demanded and paid for the premises as monthly rent, are unavailing. (Opp. Br. at 12.)  These arguments simply claim that Gap's performance under the Lease has become less profitable.  However, the law is clear that these doctrines do not apply in these circumstances.  *See Rockland Dev. Assoc. v. Richlou Auto Body, Inc.*, 173 A.D.2d 690, 691 (2d Dep't 1991) (stating that frustration of purpose doctrine does not apply where the transaction has simply "become less profitable for the affected party or even that he will sustain a loss"); *407 E. 61st Garage*, 23 N.Y.2d at 281 ("[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused").

While Gap has gone out of its way to paint a picture that the streets of Lexington Avenue are empty and Gap cannot ever secure the safety of patrons, Gap's "evidence" is a transparent excuse to justify its business decision not to reopen for in-person shopping.  Gap's fear mongering, however, is undermined entirely by Gap's actual operation of stores for in-person retail shopping just blocks away from the Premises.  (Add'l 56.1 ¶¶ 17, 21.)  As is plain from Ms. Kang's pictures taken on September 3, 2020, Gap's New York City stores are open to customers, Gap's employees are operating the stores, and customers are purchasing Gap's merchandise from these nearby Premises.  If Gap can operate these stores, there is no reason that Gap cannot do the same at these

Premises.[8]  Gap simply does not *want* to do so.

     5.     **The Case Law Gap Relies On Is Readily Distinguishable**

Further, and putting aside Gap's activity forecloses these arguments, the cases Gap cites in support of its frustration of purpose and impossibility defenses are inapplicable or inapposite.

Gap repeatedly cites to *Jack Kelly Partners LLC v. Zegelstein*, 140 A.D.3d 79, 85 (1st Dep't 2016) to support its contention that "Gap has been unable to use the Premises as intended." (Opp. Br. at 12.)  However, the facts of *Jack Kelly* are distinguishable.  There, the tenant could not legally use the premises as an office, which was the only permitted use under the lease, because the certificate of occupancy was for residential use only *and* the landlord refused to correct the certificate to allow for office use.  Here, there is no contention that Gap's certificate of occupancy changed or that its use and occupancy of the Premises became illegal.  Quite the contrary, the facts demonstrate that Gap continues to use and occupy the Premises to store merchandise, advertise its goods, and sell its products via curbside pickup. (*See* Add'l 56.1 ¶¶ 2-16.)

Gap's reliance on *Benderson Dev. Co. v. Commenco Corp.*, 44 A.D.2d 889 (4th Dep't 1974), *aff'd*, 337 N.E.2d 130 (N.Y. 1975) is also misplaced.  In *Benderson*, the landlord warranted that the tenant would be permitted "under the zoning classification and local laws and ordinances" to use the premises for the "preparation, sale and consumption on or off the premises of food and beverages."  *Id.* at 889.  However, due to inadequate sewer facilities, the tenant would not be able to legally use the premises as a restaurant until "two years and nine months after the execution of the lease."  *Id.*  There is no dispute that Gap has been operating the Premises as a retail store since at least 2005 and that it continues to operate the Premises as a retail store today.

---

[8] Dr. Zenilman's declaration also exposes that Gap's doomsday scenario of customers and employees spreading COVID-19 is explicitly premised on "the average infected person *not using protective means*," not Gap's ability to operate the Premises in accordance with applicable social distancing and mask rules.  (Zenilman Decl. ¶ 18.)

Finally, Gap's reliance on *Bush v. Protravel Int'l, Inc.*, 746 N.Y.S.2d 790, 798 (Richmond Cty. Civ. Ct. 2002) for the proposition that Gap's performance "was impossible because 'New York City was in a state of virtual lockdown with travel either forbidden altogether or severely restricted'" does not accurately apprise the court of the holding.  In *Bush*, the court considered whether it was "impossible" for the plaintiff to cancel a safari trip on September 12th, 13th, or 14th of 2001, as required by the agreement in order for the traveler to obtain a refund, due to the events of 9/11 and subsequent communication disruptions.  *Id*.  The court ultimately held that there was an outstanding issue of fact precluding summary judgment.[9]  Here, however, Gap continued to use and occupy the Premises throughout the COVID-19 pandemic, as contemplated by the Lease.

\*     \*     \*

For all the foregoing reasons, no reasonable factfinder could find that Gap's performance under the Lease was substantially frustrated or impossible.  Accordingly, Ponte Gadea is entitled to summary judgment on Counts I and II of its Counterclaims, Gap's Complaint should be dismissed, and Gap's cross-motion for summary judgment should be denied.

### E.     Gap's Casualty Argument Fails

Gap's allegation that the COVID-19 related emergency orders constitute a "casualty" under the Lease is also meritless, warranting summary judgment in Ponte Gadea's favor.

At the outset, Gap does not deny that it failed to comply with the Lease's notice provision regarding the purported COVID "casualty," but instead claims that Ponte Gadea had actual or constructive notice. (Opp. Br. at 21.)  This unsupported contention fails as a matter of law.  *See,*

---

[9] *Bush* also addressed the "law of temporary and/or partial impossibility." 746 N.Y.S.2d at 797.  Even assuming this applied (which Gap is not contending), Gap is still precluded from taking advantage of these doctrines because Gap continued to use and occupy the Premises, Gap's non-payment of Rentals is not excused by the Lease's *Force Majeure* provision, and (to the extent Gap's non-payment could be excused, which it cannot) Gap's performance would only be excused until June 8, 2020 when Gap was permitted to operate the Premises for curbside pickup.

*e.g., Millton Park, Inc. v. Am. Felt and Filter Co.*, 180 A.D.2d 235, 237 (3d Dep't 1992) (written notice means just that and actual or constructive notice is insufficient).

Next, Gap relies on the wrong Lease provision to defend its "casualty" claim. Rather than cite to the casualty provision, Gap recites the definition of *Force Majeure*, which includes "fire or other casualty," as well as "any other cause beyond Tenant's reasonable control." Lease § 1.7. However, with respect to the term "casualty" as used in Article 16 – which is dedicated to "CASUALTY" – the parties defined the term exclusively as "fire or other casualty that occurs *in* the Premises" and which Ponte Gadea had the independent ability to "repair" or "restore[ ]." *Id.* at §§ 16.1, 16.4 (emphasis added). Thus, Gap's predicate effort to expand the meaning of "casualty" is foreclosed by the Lease's terms and construction.

Further, Gap does not dispute the Lease's limitation that a qualifying "fire or other casualty" must occur *in* the Premises, which on its face undermines Gap's effort to proffer a "reasonable" interpretation to establish an ambiguity as a matter of law based on nothing occurring "*in* the Premises." *See Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (contracts should be interpreted to give all terms meaning and should not be read to render aspects superfluous or meaningless). Because Gap's "interpretation" seeks to invoke a casualty where no "fire or other casualty" has occurred *in* the Premises such an interpretation must be rejected as rendering that clause superfluous.

Finally, Gap's legal authority fails to support its casualty argument. In *45 Broadway Owner LLC v. NYSA-ILA Pension Tr. Fund*, 107 A.D.3d 629 (1st Dep't 2013), the court simply confirmed that physical damage caused by a flood fell within the "relevant lease provision" for "fire or other casualty" and that the "concept of 'casualty' does, in fact, encompass the flood resulting from the rusted gauge on the supplemental HVAC system." Further, a cursory review of

*I Q Originals, Inc. v. Bos. Old Colony Ins. Co.*, 85 A.D.2d 21 (1st Dept. 1982) reveals that, contrary to Gap's contention, this case *did not* "suggest" that a truck hijacking was a "casualty." Rather, the court considered a wholesaler's insurance policy that broadly covered "all risks of physical loss or damage to the insured property from any cause whatsoever" resulting from a "loss, disaster or casualty" to determine if a "hijacking" was covered. *Id.* at 21. Thus, like *45 Broadway Owner*, *I Q Originals* was actually tasked with determining whether a "hijacking" qualified as a triggering "event." The *I Q Originals* court held that the hijacking qualified as a "disaster," which is not a word used in Article 16 of the Lease to describe a casualty. As such, *I Q Originals* is inapposite, and Gap's casualty argument fails.

## II.    Gap Fails to Raise a Question of Material Fact To Preclude Summary Judgment on the Remaining Claims and Defenses

Gap also failed to prove or raise any question of material fact on its claims/affirmative defenses for unjust enrichment, money had and received, rescission, and reformation.

### A.    Gap's Rescission Claim Fails

Gap's rescission claim fails because it is predicated on a purported "failure of consideration," which is premised on Gap's unavailing "frustration of purpose or impossibility" defenses. (Opp. Br. at 16-17.) However, Gap has not and cannot demonstrate that it cannot operate a "first-class" retail store. As discussed above, the purpose of the Lease has not been frustrated and the circumstances have not "destroyed the consideration for which Gap bargained." Gap continues to use and occupy the Premises to this day as a retail store, including advertising its business, storing its merchandise, and operating the retail store for curbside pickup. (Add'l 56.1 ¶¶ 2-16.) Gap has also opened other retail stores in New York City for in-person shopping. *Id.* ¶¶ 17-23. Thus, Gap can and is operating the Premises in accordance with the "Retail Use" provisions of Article 4 and is unable to raise a genuine dispute of fact to support a failure of consideration.

Additionally, a lease cannot be rescinded for lack of consideration where the parties anticipated this possibility in the lease and agreed that the tenant would assume the risk of loss, which the parties did with the *force majeure* clause. *See Culver & Theisen, Inc. v. Starr Realty Company (NE) LLC*, 307 A.D.2d 910, 911 (2d Dep't 1994) (dismissing claim for rescission). The rescission claim, therefore, fails on this basis as well.

Finally, even assuming Gap could create a question of fact (which it cannot), Gap's rescission claim fails because Ponte Gadea cannot be returned to its status quo ante position. *Stryker Sec. Grp. Inc. v. Elite Investigations Ltd.*, 170 A.D.3d 553, 554 (1st Dep't 2019) (a party cannot rescind an agreement where "it cannot return that which it received" and which the other party provided). Gap continues to receive the benefits of the Lease by occupying the Premises, while Ponte Gadea is deprived of its benefit of the bargain. Further, Gap cannot return to Ponte Gadea the benefit of the bargain that it has received under the Lease – *i.e.*, its use and occupancy of the Premises for the past 15 years – from which Gap has undoubtedly made millions of dollars.[10]

**B.    Gap's Money Had and Received And Unjust Enrichment Claims Fail**

Gap's unjust enrichment and money had and received claims, which are identical, should be dismissed because they seek the same relief as Gap's contract claim. Gap complains that it paid rent in March 2020, but Ponte Gadea's failure to return that money after Gap's closure on March 19, 2020 was improper and Gap is therefore entitled to recover those sums paid for the period of March 19 to March 31. Yet, the Lease addresses the issue of rent (including holdover rent in the event the Lease terminates, as is the case here), and includes a specific *force majeure* clause that

---

[10] Ponte Gadea is also entitled to summary judgment on Gap's rescission claim and affirmative defense insofar as it is predicated on mutual mistake. (*See* Opp. Br. at 25.) As set forth in respect to Gap's reformation arguments, the plain and unambiguous language of the Lease controls, and Gap has utterly failed to challenge the veracity of this language with any competent, non-self-serving evidence that could satisfy Gap's "clear and convincing" evidentiary burden. *See Lakshmi Grocery & Gas, Inc. v. GRJH, Inc.*, 138 A.D.3d 1290 (3d Dep't 2016) (sustaining rescission claim based on "clear and convincing proof" that both contractual parties made a mutual mistake).

addresses the specific issues in dispute, and Gap even references the Lease's "first-class" language in the context of these alternative quasi-contract claims, all of which demonstrate that the Lease exists, is valid, and controls here, which forecloses these claims.  Moreover, there can be no genuine issue of material fact as to these claims where Gap admits it has continued to use and occupy the Premises.  *See Nordwind v. Rowland*, 584 F.3d 420, 434-5 (2d Cir. 2009) (affirming denial of unjust enrichment claim because the defendant was entitled to receive the funds at issue).

While Gap cites to *Curtis Props Corp. v. Greif Cos.*, 236 A.D.2d 237 (1st Dep't 1997) for the general rule that quasi-contract and contract claims may co-exist, Gap fails to demonstrate that a "bona fide dispute" exists here regarding whether the Lease controls or not.  Instead, as the above demonstrates, the Lease controls.  Thus, the Court's resolution of the contract claim will resolve these duplicative claims.  *See Solomatina v Mikelic*, 370 F. Supp. 3d 420, 433 (S.D.N.Y. 2019) (granting summary judgement because, notwithstanding the general rule noted in *Curtis*, the "facts in this case compel a different result" as resolution of the contract claim resolves the issues in dispute on the quasi-contract claims); *see also Mindspirit, LLC v Evalueserve Ltd.*, 346 F. Supp. 3d 552, 594 (S.D.N.Y. 2018).

### C.    <u>Gap's Reformation Claim Fails</u>

Finally, Gap cannot create a genuine issue of material fact regarding the existence of a mutual mistake to support its reformation claim.

As the New York Court of Appeals explained long ago, "before reformation can be granted the plaintiff must establish his right to such relief by *clear, positive and convincing evidence*." *Ross v. Food Specialties, Inc.*, 6 N.Y.2d 336, 342 (N.Y. 1959) (internal quotations and citations omitted).  "Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error nor may the plaintiff secure reformation merely upon a showing that he or his attorney made a mistake." *Id.*; *see also S.H.*

*Kress & Co. v. LPN 1st Ave. Corp.*, 235 N.Y.S.2d 339, 345 (Sup Ct. N.Y. Cty. 1962) (granting summary judgment and denying reformation claim because evidence from proponent was insufficient and thus to deny summary judgment in favor of trial would "be but an idle gesture" as "the trial could not but inevitably result in a dismissal of the [reformation] claim on the merits.").

Conspicuously absent from Gap's argument is any "clear, positive and convincing evidence" to support the existence of mutual mistake and what other purported language the Lease mistakenly excluded. If Gap had such compelling evidence, it would have identified it. Instead, Gap only submitted declarations saying that Gap made a mistake when it entered into the Lease because had Gap known then what it knows now it would not have agreed to the language in the original Lease, and knowing what it knows now Gap believes there was a mutual mistake of the contracting parties. However, New York law is clear that Gap's subjective "evidence" fails to support this claim and compels summary disposition.

Gap's "evidence" consists of the declarations of Ms. Butala and Ms. Adams (Dkt. Nos. 32 and 35), who are two former employees of Gap that left Gap's employment more than a decade ago each, and which do not include any other contemporaneous documents or communications from when the parties negotiated the Lease. Ms. Butala purports to have negotiated the Lease and Ms. Adams executed it on behalf of Gap. In their declarations, in addition to explaining what they believe the language of the Lease actually means, they simply claim that the Lease's current form is the product of mutual mistake and had they known that the current pandemic was going to occur, the parties would have agreed to different lease terms that would have forgiven Gap's rental obligation under these circumstances. (Butala Decl. ¶¶ 17, 23; Adams Decl. ¶ 16.) Neither declaration, however, provides details from the actual negotiation process, drafts of the Lease, or any communications from that time to support the conclusory, self-serving statements that there

21

was a mutual mistake. (Butala Decl. ¶ 2.)  These declarations cannot create a question of fact.  *See, e.g., Bickerstaff*, 196 F.3d at 452 ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").[11]

Further, courts have consistently granted summary judgment on reformation claims based on such insufficient evidentiary showings.  For example, in *Khezrie v. Greenberg*, No. 98-CV-3638 (ERK), 2001 WL 1922664 (E.D.N.Y. Dec. 11, 2001), *aff'd*, 53 F. App'x 592 (2d Cir. 2002), the court granted summary judgment in the landlord's favor and dismissed tenant's reformation claim because, just as here, it was based strictly on self-serving affidavits.  Recognizing that New York requires "clear and convincing evidence," *Khezrie* forecloses Gap's attempt to survive summary judgment based strictly on self-serving declarations written 15 years after the negotiation of this Lease without any information regarding the events and negotiations that took place in 2005, and without any other factual support or documentary evidence to support the self-serving statements.  *Id.* at *5-6; *see also Weider Health and Fitness v. Austex Oil Ltd.*, No. 17-cv-2089 (RMB)(OTW), 2018 WL 8579820, *11 n. 13 (S.D.N.Y. Dec. 19, 2018) ("Defendants have relied on self-serving conclusory affidavits from officers of AusTex and Ptolemy …, which are insufficient to establish a mutual mistake defense."); *U.S. Russia Inv. Fund v. Neal & Co., Inc.*, 97-CV-1788 (DC), 1998 WL 557606, at *7 (S.D.N.Y. Sept. 2, 1998) (holding that "self-serving and conclusory testimony" in support of reformation claim that was unsupported by the evidence

---

[11] *See also Amerol Corp. v Am. Chemie-Pharma, Inc.*, CV 04-0940 (JO), 2006 WL 721319, at *10 (E.D.N.Y. Mar. 17, 2006) (concluding that affidavit from relevant person that *should* have more information that merely repeats counsel's arguments lack sufficient probative value to raise question of fact to preclude entry of summary judgment); *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("The conclusory allegations in Mr. Zappia's affidavit are not sufficient to create a material issue of fact."); *United Magazine Co. v. Murdoch Magazines Distrib.*, 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005) ("[A] self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment"); *Belcher v. Serriano*, No. 95-CV-1340, 1998 WL 173169, *1 (N.D.N.Y. Apr. 9, 1998) (holding that the plaintiff's complaint and an affidavit submitted in opposition to the defendants' motion for summary judgment were "[in]sufficient to overcome summary judgment," particularly where "his affidavit contains no factual support").

was insufficient to raise an issue of fact to defeat summary judgment); *but see Winmar Co., Inc. v. Teachers Ins. And Annuity Ass'n of Am.*, 870 F. Supp. 524 (S.D.N.Y. 1994) (denying summary judgment on reformation claim on showing of "high level of proof" of mutual mistake, including contemporaneous correspondence regarding the agreement).[12]

Plainly, Gap has failed to establish the requisite *high level* of evidentiary proof that the "true" intentions of the parties was to relieve Gap of its obligation to pay rent under the circumstances at issue here.  However, Gap cannot establish such proof, as the Lease's *force majeure* clause sets forth that Gap would not be excused from its obligation to pay rent if a Force Majeure Event were to occur.  Lease, § 1.7(H).  Further, the Lease also contemplated that there may be times that Gap would be "closed for the conduct of business."  *See* Lease § 4.4(C).  Thus, the Lease is clear regarding the intention of the parties, and Gap's self-serving declarations cannot overcome the presumption that the Lease "manifests the true intention of the parties."  *See Barbagallo v. Marcum LLP,* 820 F. Supp. 2d 429, 441 (E.D.N.Y. 2011) (citations omitted).

## III.  <u>Gap Should be Required to Pay Use and Occupancy Pendente Lite</u>

Gap does not dispute that New York substantive law provides for Gap to pay use and occupancy pending resolution of this dispute, nor does Gap dispute that this is precisely what two New York state courts have already ordered Gap to pay – calculated at the monthly rental rate – in two similar rent disputes currently pending in New York City.  (Opp. Br. at 22.)

---

[12] Gap vaguely suggests that additional discovery is necessary before this claim may be resolved.  Gap is mistaken. First, it has cross moved on its reformation claim on the basis there is no genuine dispute of fact.  (Opp. Br. at 24.) Second, the Federal Rules of Civil Procedure have a procedure to safeguard against premature summary judgment motions, which is found in Rule 56(d).  "A party may respond to a motion for summary judgment with an affidavit stating that further discovery is necessary," *see Burke v State Univ. of New York, Inst. of Tech. at Utica/Rome*, 3:12-CV-1013, 2012 WL 5986548, at *4 (N.D.N.Y. Nov. 29, 2012), but failure to file such an affidavit is by itself "sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (discussing an earlier, materially identical version of Rule 56(d)). *See also Jones v Bryant Park Mkt. Events, LLC*, 658 F. App'x 621, 626 (2d Cir 2016) (affirming summary judgment and rejecting Jones' Rule 56(d) argument because he "never filed a Rule 56(d) affidavit.").  Because Gap has failed to submit a Rule 56(d) affidavit or otherwise demonstrate discovery is necessary, summary judgment is not precluded.

Instead, Gap relies exclusively on Rule 65 and argues this *procedural* rule should circumvent New York *substantive* law on this issue.  In doing so, and without any other support, it is apparent that Gap seeks to violate the twin goals that underscore the *Erie* doctrine: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 467 (1965); *see also id.* at 468 ("The *Erie* rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court.").  Here, strictly by bringing this suit in federal court (forum-shopping), Gap seeks a different result that requires the displacement of New York law and Ponte Gadea's substantive right to receive use and occupancy *pendente lite* (*i.e.*, an inequitable administration of the relevant laws).  (*See also* Moving Br. at 23.)  As such, Gap's position should be rejected.

However, even assuming Rule 65 applies, Ponte Gadea is still entitled to use and occupancy pending resolution of this dispute.  Ponte Gadea has established a likelihood of success on the merits, but Gap contends that Ponte Gadea seeks monetary damages and thus cannot establish "irreparable harm."  (Opp. Br. at 22.)  Yet, as is the case here, courts find irreparable harm exists where the defendant would be unable to pay a subsequently obtained money judgment. *See, e.g., Hughes Network Sys., Inc. v. InterDigital Comms Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (stating that "even where a harm could be remedied by money damages at judgment," irreparable harm may be found where "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered an collected") (citation omitted); *see also Sperry, Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982) (recognizing "exceptional cases" where irreparable harm exists notwithstanding a potential award of monetary damages).

As the filings in this dispute demonstrate, including Gap's motion to transfer this matter

and others into a multi-district litigation, Gap ceased paying rent at all of its retail stores nationwide in April 2020.  But, based on Ponte Gadea's showing, Gap's decision was meritless and Gap will soon be subject to significant adverse monetary judgments for all of this unpaid rent nationwide. Meanwhile, news outlets have reported that Gap is on the short-list of retailers likely to seek bankruptcy protection this year.[13]  Viewed together – the likelihood of significant adverse monetary judgments and Gap's inability to pay them – Ponte Gadea has established that this is an "exceptional case" where irreparable harm exists notwithstanding its request for monetary relief. Consequently, as is typical under New York law, Gap should be directed to commence payment of use and occupancy immediately.  Indeed, Gap has conceded that it is currently able to do so, *see* Opp. Br. p. 23 (requesting that the payments be made "with the Court (and not paid to defendant))," but that it prefers not to and especially prefers not to pay its landlord, Ponte Gadea. On balance, the Court should grant Ponte Gadea's request for use and occupancy *pendente lite.*

## CONCLUSION

For the foregoing reasons, Ponte Gadea respectfully requests that the Court (1) grant Ponte Gadea's motion for summary judgment; (2) deny Gap's cross-motion for summary judgment; (3) grant Ponte Gadea judgment in the amount of **$6,986,112.48**, representing unpaid Rental, Additional Rent, and Holdover Charges through September 2020, along with the Holdover Charges accruing monthly in the amount of $1,230,216.93 starting on October 1, 2020, plus prejudgment interest calculated from the date of the breach to entry of judgment; (4) order an immediate hearing to determine Ponte Gadea's reasonable attorneys' fees under Sections 23.3 and 24.1 of the Lease; (5) in the alternative, order Gap to pay use and occupancy to Ponte Gadea during the pendency of this action; and, (6) for any other relief this Court deems just.

---

[13] *See, e.g.* https://www.sfchronicle.com/business/amp/Gap-s-future-lies-with-Bankruptcy-Court-7943518.php; https://www.natlawreview.com/article/20-retailers-to-watch-bankruptcy-filing-second-half-2020.

Dated: New York, New York
September 18, 2020

**AKERMAN LLP**


By:  */s/ Darryl R. Graham*
    Darryl R. Graham
    Darryl.Graham@akerman.com
    Kathleen M. Prystowsky
    Kathleen.Prystowsky@akerman.com
520 Madison Avenue, 20th Floor
New York, New York 10022
Tel: (212) 880-3800
Fax: (212) 259-7181

*Attorneys for Defendant*
*Ponte Gadea New York LLC*