

Darryl R. Graham

Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY  10020

T: 212 880 3800
F: 212 905 6473

October 8, 2021

**VIA ECF**
Honorable Katharine H. Parker, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

>   Re:   *The Gap, Inc. v. Ponte Gadea New York LLC*
>         Case 1:20-cv-4541(LTS)(KHP)

Dear Magistrate Judge Parker:

We are counsel to Ponte Gadea New York LLC ("Ponte Gadea") in the above-captioned action.

On September 28, 2021, the Court held a telephonic conference to discuss Gap's request for discovery regarding purported factual issues related to the outstanding damages issues, in particular the determination of Ponte Gadea's award of damages pursuant to Section 23.3(A)(3) of the Lease.  Your Honor subsequently directed that, to the extent that following Gap's submission of its damages submission there was a factual dispute, the parties were to submit a joint letter proposing a discovery schedule on October 8, 2021. (ECF No. 101).

Thereafter, on Friday, October 1, 2021 (at 11:01 pm), Gap submitted its 51-page response to Ponte Gadea's September 10, 2021 damages submission, which included a 6-page cover letter, declarations of Gap's corporate employees, Jennifer Rondholz ("Rondholz") and Bryan Dyer, and the expert report of Sharon Locatell ("Locatell"). (ECF No. 102) (the "Response Letter").

Upon preliminary review of Gap's Response Letter, it became apparent to Ponte Gadea that there is not a genuine factual dispute, but instead a legal dispute as to the application and interpretation of Section 23.3(A)(3).  Accordingly, for the reasons explained herein, Ponte Gadea respectfully submits that a discovery schedule is unnecessary, or at the very least premature, and that the legal issue should be resolved before consideration of whether any discovery is necessary.  Further, it is worth noting that in light of the potential for discovery and increased costs, Ponte Gadea sought additional time to more fully consider and address the issues raised with Gap's Response Letter, as well as to consider any potential stipulations relevant to the outstanding damages issues, which we have not had an opportunity to even address with our client.

_____

To that end, on October 7, 2021, Ponte Gadea conferred with Gap regarding the professional courtesy of a brief one (1) week extension to the deadline to submit a joint letter to the Court regarding a discovery schedule, particularly as we had not even received any proposal from Gap, which is the party that purportedly desires discovery.

In response, Gap said that it would agree to this request only if two conditions were met: (1) that Ponte Gadea waive its right to respond to Gap's October 1, 2021 submission (a highly objectionable and inappropriate request, particularly given Gap's attempt to reargue issues decided by Your Honor) and (2) waive interest for the one week period, despite Gap's contention that discovery is needed. As this conditional agreement was unreasonable, Ponte Gadea rejected the conditions and requested that Gap propose a discovery schedule for consideration, which had yet to be discussed as of October 7. Later that evening, Gap responded and broadly proposed that "document production" be completed by November 16, 2021 and "[u]p to two depositions per side by December 14." Gap did not state what the scope of discovery would be, whether it would apply to expert or fact discovery, or any explanation for its proposal. Further, Gap's proposal of two depositions seems an attempt to prejudice Ponte Gadea, given that Gap submitted three declarations in its October 1, 2021 submission and there is a non-party real estate broker that Gap received over 10,000 pages of documents from and which Gap's expert relies on. A copy of the parties' communications is attached as **Exhibit A**.

Putting aside Gap's dilatory and unfortunate tactics, Ponte Gadea is unable to agree to Gap's proposed discovery schedule given the lack of any genuine factual dispute. On further consideration, and as alluded to during the September 28, 2021 telephonic conference, there is a prevailing legal issue regarding the correct formula or methodology utilized to determine the damages pursuant to Section 23.3(A)(3) of the Lease. This issue should be addressed and resolved before engaging in potentially unnecessary fact discovery because, if the Court resolves this legal issue in Ponte Gadea's favor, it will also resolve the purported factual issues and thus avoid the unnecessary time and expense of Gap's proposed discovery.

Accordingly, Ponte Gadea asks that the Court resolve this dispute at the upcoming conference. In the event that there is a genuine factual dispute, Ponte Gadea will be prepared to enter into a discovery schedule targeted to resolving that dispute.

### I. There Is A Legal Dispute, Not A Genuine Factual Dispute Concerning the Application of Section 23.3(A)(3) of the Lease

Rather than contend with the precise language of Section 23.3(A)(3) of the Lease, Gap attempts to shift the Court's focus away from the contractual language and instead relies on an "industry" definition for the meaning of "net effective rental." Gap's declarations do not create a genuine issue of fact, however. They demonstrate that Gap is attempting to use extrinsic evidence to rewrite the plain terms of the Lease because the result does not favor Gap. As a matter of law, Gap is forbidden from altering an unambiguous contract with extrinsic evidence. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009); *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (N.Y. 2004) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the

guise of interpreting the writing.") As such, Gap's Response Letter should be rejected, and Ponte Gadea's damages position set forth in its September 10, 2021 Letter (ECF No. 192) be adopted by the Court.

In its Response Letter, Gap represents that "[t]he Lease does not define 'net effective rental value.'" (ECF No. 102 at 2.) In order to fill this purported gap in the Lease, Gap submits the Locatell and Rondholz Declarations to support Gap's position that "'net effective rent' … means 'the present value over the term of the lease of the rental stream less the amortized costs of any capital expenses incurred in obtaining the lease." (*Id.*) Gap, then, determines that that "term of the lease" must mean the term of a *new*, theoretical lease, rather than the remaining term of the Parties' Lease, October 15, 2020 – January 31, 2021. Thus, Gap proposes that Ponte Gadea could have entered into a new lease for a *ten year term*, with 10% rent increases for each year after year five, with a six month rent free period, and only $1,885,000.00 ($50 per square foot) in Landlord expenses. (*See* ECF No. 102-3 at 18-26.) Gap, then, amortizes the difference between all the rent Ponte Gadea could have earned and expenses Ponte Gadea would have incurred over this imaginary ten year lease term to get a "net effective rental" for the October 15, 2020 – January 31, 2021 remaining term of the Lease. However, Gap's "interpretation" of how to calculate "net effective rental" is directly contradicted by the Lease.

The premise of Gap's argument – that "net effective rental value" is not defined in the Lease, so it must rely on the "industry" standard – is wrong. Section 23.3(A)(3) of the Lease provides that Ponte Gadea is entitled to "an amount equal to the excess of (a) the *Rental for the period which otherwise would have constituted the unexpired portion of the Term*…, [*i.e.*, October 15, 2020 through January 31, 2021], over (b) the then fair and reasonable net effective rental value of the Premises *for the same period* [*i.e.*, October 15, 2020 through January 31, 2021….*"* (Lease §23.3(A)(3).) (emphasis added). The sentence then continues and defines what "net effective rental value" means, stating that it "is calculated by deducting from the fair and reasonable rental value of the Premises the expenses that Landlord would reasonably expect to incur in reletting the Premises, *including, but not limited to, all* repossession costs, brokerage commissions, legal expenses, attorneys' fees and disbursements, alteration costs, contributions to work and other expenses of preparing the Premises for such reletting…." (*Id.*) (emphasis added). Section 23.3(A)(3) further explains that "[i]f … the Premises … have been relet by Landlord *for the period which otherwise would have constituted the unexpired portion of the Term* [again, October 15, 2020 through January 31, 2021]…, then the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value of the Premises…."[1] (*Id.*) (emphasis added).

A plain reading of Section 23.3(A)(3) demonstrates that the calculation for the net effective rental value of the Premises is limited to the "unexpired portion of the Term." Thus, in order to calculate the "net effective rental value of the Premises," the parties must identify the "fair and

---

[1] Gap takes issue with Ponte Gadea's use of the term "Replacement Tenant Period," claiming that the Lease precludes reliance on the "actual rental income Landlord either realized or would have realized." The last sentence of Section 23.3(A)(3) directly contradicts Gap's argument, as it expressly adopts the rent under any new lease as "prima facie evidence" of fair market rent. Thus, a replacement tenant is precisely what Section 23.3(A)(3) is attempting to address.

Honorable Katharine H. Parker, U.S.M.J.
October 8, 2021
Page 4

reasonable rental value of the Premises" for October 15, 2020 through January 31, 2021 and "the expenses that Landlord would reasonably expect to incur" for the same period. In other words, the damage calculation is determined in relation to strictly the "same period" of the "unexpired portion of the Term" only, with costs deducted from there. Indeed, the Lease makes clear that "all" costs incurred in re-letting the Premises shall be deducted, not merely a portion of the costs after amortizing the total costs over a theoretical lease term years longer than the appliable period. There is simply no support in the Lease for Gap's speculative contention that "net effective rental value" requires the parties to create a hypothetical ten year lease, with rent and theoretical rent increases that Ponte Gadea might receive over the next ten years. Indeed, by using a theoretical 10-year lease, Gap artificially inflates the rental value for the relevant period and improperly reduces costs by spreading them over 120 months, instead of the relevant 3.5 months.[2,3] That is plainly not what the parties contemplated. Thus, Gap's argument should be rejected and the plain language of the Lease applied.

Further, there is no genuine dispute of any material factual to resolve because Gap has admitted the necessary facts for the Court to adopt Ponte Gadea's damages calculation for Section 23.3(A)(3) of the Lease. As Gap admits in its Response Letter, a new tenant would demand (and the market would provide) *at least* six months free rent due to the depressed rentals and market conditions that existed for the October 15, 2020 through January 31, 2021 time period.[4] (ECF No. 102 at 5 ("retail landlords have been offering six (6) months of free rent at the outset of these leases"); ECF No. 102-3 at 19 ("12 months of free rent"); 23 ("[a]pplying market concession terms of six (6) months free rent and … tenant improvement allowance"). Additionally, Gap's expert opines that Ponte Gadea would incur $50 per square foot or $1,885,000.00 in Landlord work.

---

[2] Gap's reliance on *720 Lex* further undermines Gap's contention that the calculation of rent and expenses should be calculated and amortized by reference to a new ten year period. Indeed, in *720 Lex*, the court considered the rent projected over a 15-year lease term into the future ***because the unexpired portion of the relevant lease was the entire lease term of 15-years***. See *720 Lex Acquisition LLC v. Guess? Retail, Inc.*, No. 09-cv-7199 (AJN), 2014 WL 4184691, at *5, 11-12 (S.D.N.Y Aug 22, 2014). Moreover, *720 Lex* determined that costs associated with re-letting the Premises must be deducted from the first year of rental income generated by the hypothetical market lease, not amortized over the entire lease term, as Gap attempts to do to here reduce its damages. *Id.* at *13. In other words, applying *720 Lex* here results in adopting Ponte Gadea's calculation of damages.

[3] Gap's reliance on *Herman Miller* is unavailing. There, the Court did not adopt Gap's proposed damages calculation, but the damages award took the form of reducing the rental period by 9 months. Further, Gap cannot rely on the definition of "effective" rental value applied in *Herman Miller*, as it is plainly at odds with the plain language of Section 23.3(A)(3) of the Lease.

[4] It is telling that Gap's expert attempts to create comparables using leases entered into in 2018 and 2019, prior to the COVID-19 pandemic, and does not use any comparable leases that that were entered into for 2020 for her analysis, as there are none. (*See* ECF No. 102-3 at 18.) This fact alone should serve as a basis to exclude Gap's expert under *Daubert* and Gap's own case law. *See 720 Lex Acquisition LLC*, 2014 WL 4184691, at *13 ("Consistent with the plain meaning of the lease's language, the evident purpose of looking to a post-breach re-let is that a new lease signed within a 'reasonable time' of a breach likely will be a good indicator of market conditions at the time of that breach. By contrast, a previously signed lease—like the Madden Lease, which was signed two years before Guess's breach—may not bear the same relationship to prevailing market values. For these reasons, the Court rejects Guess's theory that the reasonable rental value of the Premises should be determined solely by looking to the Madden rents for the remaining term of the Madden Lease."). In the event expert discovery proceeds, Ponte Gadea can address the numerous deficiencies in the Locatell Report in a *Daubert* motion at the appropriate time.

_____

(ECF No. 102-3 at 23-25.) Thus, by applying the Lease's language to Gap's admissions, the "then fair and reasonable net effective rental value of the Premises *for the same period*," October 15, 2020 through January 31, 2021," is $0.00 ($0 in rent less $1,885,000.00 in expenses, is actually a negative number representing a significant financial loss to Ponte Gadea). As such, this results in a "liquidated and agreed final damages … amount equal to … the Rental for the period" or $2,332,660.26. (ECF No. 95).

In addition to attempting to create an issue of fact by rewriting the Lease, Gap also argues that Ponte Gadea should have started marketing the premises in 2018 because it "could have obtained a new tenant for the Premises long before June 15, 2020." (ECF No. 102 at 3.) This is a classic "blame the victim" argument that should be rejected outright, as no reasonable person could ever find that Ponte Gadea should have foreseen Gap's breach of the Lease in April 2020 and the termination of the Lease on June 15, 2020 back in 2018. Indeed, the parties expressly agreed that Ponte Gadea had no obligation to mitigate its damages at all in the event Gap breached the Lease. (Lease § 23.1(B).) Further, the argument is nonsensical. Even if Ponte Gadea had begun searching for a new tenant in 2018 and had found a new tenant "long before June 15, 2020," the new lease would have necessarily commenced *after* January 31, 2021, as Gap had an exclusive leasehold interest in the Premises until then. Thus, Ponte Gadea could only have entered into a new lease for the Premises for a time period during the original term of Gap's tenancy after the Lease terminated and Gap had vacated. It is absurd to think that a commercial tenant would enter into a lease with Ponte Gadea for the Premises before Gap breached the Lease for a leasehold term that overlapped with Gap's Lease term. For this reason, as well, Gap's 2018 marketing theory should be rejected.

For all these reasons, it is apparent that Gap's Response Letter brings into focus a legal dispute on how to calculate "net effective rental value" under Section 23.3(A)(3) of the Lease, not a genuine factual dispute. Therefore, Ponte Gadea respectfully requests that the Court stay fact discovery pending resolution of this issue and, upon concluding that the language of the Lease controls (as Ponte Gadea contends), not newly invented "industry" standards (as Gap contends), award Ponte Gadea $2,332,660.26 in damages for the October 15, 2020 through January 31, 2021 time period.

**II.   Gap's Response Letter Is An Improper And Belated Attempt to Reargue Issues the Court Decided in Its Damages Order**

Gap's Response Letter should also be rejected because it is an improper attempt to reargue numerous issues that Your Honor resolved in the Opinion and Order on Damages, which was entered on August 10, 2021 (the "Damages Opinion"). (ECF No. 92.)

Local Rule 6.3 requires "a notice of motion for reconsideration or reargument of a court order … [to] be served withing fourteen (14) days of entry of the Court's determination…." The rules further requires that the "[t]here be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."

_____

"The fourteen-day deadline for motions for reconsideration [and reargument] 'is not merely a procedural quirk, it serves to protect the integrity of proceedings before the Court by ensuring some measure of finality.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 14-MD-2542 (VSB), 2019 WL 2603187, at *2 (S.D.N.Y. June 25, 2019) (quoting *United States v. Reichberg*, No. 1:16-cr-468-GHW, 2018 WL 6599465, at *9 (S.D.N.Y. Dec. 14, 2018) (internal quotation marks omitted)). "Accordingly, courts 'in this Circuit routinely deny untimely motions for reconsideration without considering their merits.'" *Id.* (quoting *Beckles v. City of New York*, No. 08 Civ. 3687(RJH)(JCF), 2010 WL 1841714, at *4 (S.D.N.Y. May 10, 2010)) (citing *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, No. 01 Civ. 654(RCC), 2005 WL 1176122, at *2 (S.D.N.Y. May 18, 2005) (collecting cases).

Your Honor issued the Damages Opinion nearly two months ago. Gap never filed any notice of motion for reargument or reconsideration, as required by Local Rule 6.3, and Gap certainly never did so within fourteen days of the Damages Opinion. Accordingly, Gap's numerous attempts to reargue Your Honor's conclusions in the Damages Opinion in its October 1, 2021 Response Letter should be summarily rejected as untimely and procedurally improper.

Gap's reargument attempt also fails on the merits. In the middle of Gap's 22-line paragraph on Page 4 of the Response Letter, Gap argues that in finding "Gap ha[d] not provided any evidence to suggest that it was unreasonable at the commencement of the Lease for the Lease signatories to agree to the percentage multiples set forth in the holdover provision," Your Honor "overlooked Gap's evidence" "concerning "the punitive effect of the enforcement of the holdover provision." (ECF No. 102 at 4, n. 4.) Gap's argument is wrong. First, Judge Swain expressly awarded holdover rent (*see* ECF No. 56 at 26), and Gap failed to move for reargument or reconsideration of that decision, precluding its "penalty" argument. Further, Gap's "evidence" does not demonstrate the unreasonableness of what the parties expressly agreed to in the Lease, but are self-serving statements attempting to (again) change the terms of the Lease. Thus, Gap's reargument attempt fails.

Gap also argues that Your Honor should reconsider the findings in the Damages Opinion concerning taxes. (ECF No. 102 at 5-6.) Gap now claims that it "disputes the amount of taxes Landlord claims to be due." (*Id.* at 5.) Gap's actions contradict this assertion. Indeed, in one of Gap's four damage proposals, Gap calculated the sum of real estate taxes (among other things) owed, which explicitly included $240,427.00 in real estate taxes, representing "the sum total of all amounts which the Landlord would have received under the Lease but for the alleged breach." (*See* ECF No. 72 at ¶ 5, Ex. B.). Additionally, as explained in Ponte Gadea's September 10, 2021 submission (ECF No. 96), *Gap has already paid Ponte Gadea $240,427.00 in real estate taxes*. (ECF No. 96 at 2, ECF No. 96-2 at 3.) Accordingly, Gap's improper and untimely reargument attempt fails.

For all these reasons, Ponte Gadea respectfully requests that the Court deny Gap's untimely, procedurally improper, and substantively deficient attempt to reargue Your Honor's Damages Opinion.

Honorable Katharine H. Parker, U.S.M.J.
October 8, 2021
Page 7

---

### III. The Court Should Adopt Ponte Gadea's Damages Submission (ECF No. 96), As Gap Does Not Contest It

Finally, Ponte Gadea requests that Your Honor award Ponte Gadea the damages set forth in its September 10, 2021 damages submissions. (ECF Nos. 95-96.) While Your Honor asked the parties to submit their position to the Court calculating damages based on the Damages Opinion, Gap has not done this. Gap is only interested in improper reargument and delaying judgment. As such, the only damages calculation before the Court based on the factual determinations of the Damages Opinion is Ponte Gadea's submission. (ECF No. 96.)

Therefore, Ponte Gadea respectfully requests that Your Honor find that Gap's breach of the Lease caused Ponte Gadea $9,730,695.99 in recoverable damages and enter judgment in Ponte Gadea's favor for the outstanding amount of $2,844,667.07, plus attorneys' fees accrued to date.[5]

\*   \*   \*

For all the foregoing reasons, Ponte Gadea respectfully requests that the Court adopt Ponte Gadea's damages submissions and deny Gap's request to open discovery, as there are no genuine issues of fact to be resolved. Ponte Gadea will be prepared to answer any questions the Court may have regarding its damages submission and the legal issue before the Court at the upcoming conference scheduled for October 26, 2021, as well as any other open issues that need to be addressed.

We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ *Darryl R. Graham*

Darryl R. Graham

---

[5] As stated in Ponte Gadea's damages submission, Gap has already satisfied a portion of the damages that Ponte Gadea is entitled to by paying Ponte Gadea $6,886,018.92 on September 1, 2021, after issuance of Your Honor's Damages Opinion.

60336640

# EXHIBIT A

# Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Graham, Darryl (Ptnr-NY) |
| **Sent:** | Thursday, October 7, 2021 1:41 PM |
| **To:** | Epstein, Joshua |
| **Cc:** | Bernstein, Joshua (Ptnr-NY); Prystowsky, Kathleen (Ptnr-NY) |
| **Subject:** | Ponte Gadea v. Gap |

Josh,

I'm following up on my call/voicemail from today to discuss Judge Parker's directive for the parties to submit a joint letter regarding a proposed discovery schedule tomorrow, October 8.  We and our client are still evaluating Gap's letter and need additional time to complete this process.  To that end, we intend to seek a brief extension of the current deadline for one (1) week, or to October 15, 2021, for the parties to submit this joint letter to the Court.  Please let us know if you consent, and we will prepare an appropriate joint letter to the Court for review.

Thanks,
Darryl

**Darryl R. Graham**
Partner
Akerman LLP | 1251 Avenue of the Americas, 37th Floor | New York, NY 10020
D: 212 259 6444
Admitted to Practice in NY, DC, FL, and CA
darryl.graham@akerman.com

*We've moved!*
Please note the new address of our New York office.

# Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Epstein, Joshua <jepstein@dglaw.com> |
| **Sent:** | Thursday, October 7, 2021 4:45 PM |
| **To:** | Graham, Darryl (Ptnr-NY) |
| **Cc:** | Bernstein, Joshua (Ptnr-NY); Prystowsky, Kathleen (Ptnr-NY); Geibelson, Michael A.; Schneider, Jesse; Greenberg, David; Karram, Zachary |
| **Subject:** | RE: Ponte Gadea v. Gap |

[External to Akerman]

Darryl, we will agree to a one week extension of the deadline for the joint letter on the following conditions:

1. Ponte Gadea will not use the intervening week to submit a letter (or any other "advocacy piece") replying to the submission we made on October 1; and
2. Ponte Gadea will agree to waive interest for the one week extension period.

Please let us know.

Thanks.

Regards,
Josh

## Joshua H. Epstein

jepstein@dglaw.com
d   212 468 4869
m  917 825 9270

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**

1675 Broadway, New York, NY 10019
dglaw.com

*\* Davis+Gilbert has moved - please note our new address*

# Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Graham, Darryl (Ptnr-NY) |
| **Sent:** | Thursday, October 7, 2021 5:15 PM |
| **To:** | Epstein, Joshua |
| **Cc:** | Bernstein, Joshua (Ptnr-NY); Prystowsky, Kathleen (Ptnr-NY); Geibelson, Michael A.; Schneider, Jesse; Greenberg, David; Karram, Zachary |
| **Subject:** | RE: Ponte Gadea v. Gap |

Josh,

We do not agree to these conditions in response to what was a mere request for professional courtesy in the form of a brief extension. If you do not agree to this request, please send us your proposed discovery schedule and we will review and let you know if we can agree or not.

Thanks,
Darryl

**Darryl R. Graham**
Partner
Akerman LLP | 1251 Avenue of the Americas, 37th Floor | New York, NY 10020
D: 212 259 6444
Admitted to Practice in NY, DC, FL, and CA
darryl.graham@akerman.com

*We've moved!*
Please note the new address of our New York office.

# Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Epstein, Joshua <jepstein@dglaw.com> |
| **Sent:** | Thursday, October 7, 2021 6:08 PM |
| **To:** | Graham, Darryl (Ptnr-NY) |
| **Cc:** | Bernstein, Joshua (Ptnr-NY); Prystowsky, Kathleen (Ptnr-NY); MGeibelson@RobinsKaplan.com; Schneider, Jesse; Greenberg, David; Karram, Zachary |
| **Subject:** | RE: Ponte Gadea v. Gap |

[External to Akerman]

Here is our proposed schedule:

1. Document production completed by November 16.
2. Up to two depositions per side completed by December 14.

Please let me know.

Thanks.

Regards,
Josh

## Joshua H. Epstein

jepstein@dglaw.com
d   212 468 4869
m   917 825 9270

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

*\* Davis+Gilbert has moved - please note our new address*

1

# Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Graham, Darryl (Ptnr-NY) |
| **Sent:** | Friday, October 8, 2021 3:39 PM |
| **To:** | Epstein, Joshua |
| **Cc:** | Bernstein, Joshua (Ptnr-NY); Prystowsky, Kathleen (Ptnr-NY); MGeibelson@RobinsKaplan.com; Schneider, Jesse; Greenberg, David; Karram, Zachary |
| **Subject:** | RE: Ponte Gadea v. Gap |
| **Attachments:** | Joint Letter Regarding Discovery Schedule.DOCX |

Josh,

We cannot agree to your proposed discovery schedule.  It is our contention that fact discovery should be stayed until the Court resolves the outstanding legal issues, including, but not limited to, the applicable formula to determine damages pursuant to Section 23.3(A)(3) of the Lease, as resolution of these legal issues will resolve the need for fact discovery (and eliminate the concomitant costs and delays).  In the event that the Court's resolution of these legal issues requires the resolution of genuine issues of material fact, Ponte Gadea will work in good faith to propose a suitable discovery schedule to resolve those specific factual issues.

To that end, we propose filing the attached joint letter.  Please confirm your consent for us to file the joint letter.

Thanks,
Darryl


**Darryl R. Graham**
Partner
Akerman LLP | 1251 Avenue of the Americas, 37th Floor | New York, NY 10020
D: 212 259 6444
Admitted to Practice in NY, DC, FL, and CA
darryl.graham@akerman.com

*We've moved!*
Please note the new address of our New York office.

1

# Graham, Darryl (Ptnr-NY)

| | |
|---|---|
| **From:** | Epstein, Joshua <jepstein@dglaw.com> |
| **Sent:** | Friday, October 8, 2021 5:09 PM |
| **To:** | Graham, Darryl (Ptnr-NY) |
| **Cc:** | Bernstein, Joshua (Ptnr-NY); Prystowsky, Kathleen (Ptnr-NY); MGeibelson@RobinsKaplan.com; Schneider, Jesse; Greenberg, David; Karram, Zachary |
| **Subject:** | RE: Ponte Gadea v. Gap |

[External to Akerman]

Darryl, we are providing our consent to filing the joint letter, but otherwise reserve all rights with respect to the position you have chosen to take on this issue.

Regards,
Josh

## Joshua H. Epstein

jepstein@dglaw.com
d   212 468 4869
m   917 825 9270

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

*\* Davis+Gilbert has moved - please note our new address*

1