

Darryl R. Graham

Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY  10020

T: 212 880 3800
F: 212 905 6473

March 9, 2022

**VIA ECF**
Honorable Katharine H. Parker, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:   *The Gap, Inc. v. Ponte Gadea New York LLC*
              Case 1:20-cv-4541(LTS)(KHP)

Dear Magistrate Judge Parker:

     We serve as counsel to Ponte Gadea New York LLC ("Ponte Gadea") in this action and, pursuant to Your Honor's direction, write jointly with counsel for The Gap, Inc. ("Gap") regarding the issues to be tried at the bench trial tentatively set for May 18 and the afternoon of May 19, as needed.

     The parties have conferred with counsel and their respective witnesses – *i.e.*, Alina Toyas and expert Andrew Kahn (Ponte Gadea) and Jennifer Rondholz and expert Sharon Locatell (Gap) – regarding availability but Ponte Gadea's client is unavailable on those dates.  Ponte Gadea has requested additional dates and will work with the Court and Gap to secure an alternative trial date. As discussed at the prior conference, the parties intend to present direct testimony through the introduction of those witnesses' declarations filed on September 10, 2021 and October 1, 2021, respectively, followed by cross-examination and re-direct, if any.

     With respect to the issues to be tried, the parties have conferred and agree (unless otherwise noted) that the disputed issues are as follows:

        a) The amount of damages to be awarded Ponte Gadea, if any, for the period of October 15, 2020 through January 31, 2021, pursuant to Section 23.3(A)(3) of the Lease, as set forth in the Court's prior order granting summary judgment as to liability (ECF No. 56) and the Court's order on damages (ECF No. 92).  The parties do not dispute that the "Rental" for the period October 15, 2020 through January 31, 2021 is $2,332,660.26, nor do the parties dispute that the discount rate should not be applied to reduce the calculation to present value as the period in question has already passed.  Thus, the open issue is the determination of the "then fair and reasonable net effective rental value of the Premises for the [period of October 15, 2020 through January 31, 2021]."

akerman.com

61967881

Honorable Katharine H. Parker, U.S.M.J.
March 9, 2022
Page 2

---

    b) How Section 23.3(A)(3) is applied to calculate damages for the period of October 15, 2020 to January 31, 2021.

    Ponte Gadea contends that the plain and unambiguous language of Section 23.3(A)(3) of the Lease controls, which, among other things, is specifically focused on the relevant "unexpired portion of the term" – *i.e.*, October 15, 2020 through January 31, 2021 only – and that both the fair and reasonable rental value of the Premises and the costs associated with reletting the Premises (together the "net effective rental value") is focused on that period specifically. Ponte Gadea's position is that, due to the high costs and uniquely low rental value during this particular period, this figure actually results in a negative number, but defaults to $0.00 for the purpose of this calculation, which results in damages of $2,332,660.26.

    Gap contends that, because "fair and reasonable net effective rental value" is not defined in Section 23.3(A)(3) or elsewhere in the Lease, the term must be understood and applied according to how it is used and understood in the commercial real estate industry. The testimony of Ms. Locatell and Ms. Rondholz demonstrates that the industry standard meaning of "net effective rental value" is "the present value over the term of the lease of the rental stream less the amortized costs of any capital expenses incurred in obtaining the lease." For the purposes of this analysis, Ms. Locatell and Ms. Rondholz assumed a standard commercial lease with a 10-year term, and that costs incurred in reletting the premises would be amortized over the entire lease term. Based on this, Gap contends that the "net effective rental value" is between approximately $1.2 million and $1.4 million, with resulting damages ranging from $738,592.00 to $940,173.00.

    c) Unless stipulated by the parties in advance of trial, the amount of other damages to be awarded Ponte Gadea, as set forth in the Court's orders (ECF Nos 56, 92), are for i) unpaid fixed rent, additional rent, real estate taxes, and interest calculated thereon at 5.25%; ii) holdover damages, and interest calculated thereon at 9%; iii) prejudgment interest calculated to August 10, 2021, and iv) attorneys' fees and costs incurred in connection with this action. On or about September 1, 2021 and October 28, 2021, Gap remitted two payments to Ponte Gadea in the amounts of $6,886,018.92 and $456,208.76, respectively, totaling $7,342,227.68 with respect to the foregoing damages. The September payment accounted for categories i, ii, and iii. The October payment accounted for category iv, but only through June 4, 2021. Therefore, Ponte Gadea contends that the amount of attorneys' fees and costs incurred from June 4, 2021 through resolution of this action must be resolved by the Court.

    Gap does not concede, and reserves its right to contest, the award of any additional attorneys' fees and costs to Ponte Gadea, and further contends that the total

Honorable Katharine H. Parker, U.S.M.J.
March 9, 2022
Page 3

_____

        damages awarded to Ponte Gadea in this action cannot and should not exceed the total amount of rent payments Ponte Gadea would have received had the Lease been fully performed through the Expiration of the Term.  Ponte Gadea disputes these contentions and further disputes that Gap is entitled to raise this argument (or any argument regarding entitlement to damages) as the Court has already adjudicated Ponte Gadea's entitlement to damages and issued a limited directive to the parties solely to recalculate the damages to be awarded Ponte Gadea based on the Court's Opinion and Order.  *See* ECF No. 92 p. 31; *see also* ECF No. 56.

        Respectfully submitted,

        /s/ *Darryl R. Graham*

        Darryl R. Graham